John A. CARMAN

v.

Elliott RICHARDSON, Secretary, United States Department of Health, Education & Welfare, et al.

Civ. A. No. 6766.

United States District Court,
D. Vermont.

March 22, 1973.

John T. Sartore, and Peter M. Collins, Paul, Frank & Collins, Burlington, Vt., for plaintiff.

William B. Gray, Asst. U. S. Atty., Rutland, Vt., and Lawrence E. Burstein, United States Dept. of H. E. W., Boston, Mass., for defendants Elliott Richardson, Secretary, U. S. Dept. of H. E. W., Harold Putnam, Director, Region I, U.

S. Dept. of H. E. W. and Dr. Gertrude Hunter, Regional Health Director, Health Services and Mental Health Administration, U. S. Dept. of H. E. W.

Alan F. Sylvester, and Harold C. Sylvester, McNamara, Fitzpatrick, Sylvester, Farrell & Maley, Burlington, Vt., and Joseph F. Cahill, Jr., St. Albans, Vt., for St. Albans Hospital.

## OPINION AND ORDER

COFFRIN, District Judge.

This is an action brought by John A. Carman, a citizen of Swanton, Vermont, and a resident of Area I–1 as designated in the Vermont State Health Plan, against Elliott Richardson, Secretary of the United States Department of Health, Education and Welfare, Arnold Putnam, Director, Region I, United States Department of Health, Education and Welfare, Dr. Gertrude Hunter, Regional Health Director, Health Services and Mental Health Administration, United States Department of Health, Education and Welfare and the St. Albans Hospital located in St. Albans, Vermont.

The complaint alleges that defendant St. Albans Hospital seeks a guarantee from the United States Department of Health, Education and Welfare of a proposed loan in the amount of approximately $1,250,000 to be made to it by the Connecticut General Life Insurance Company for the purpose of financing construction of an expanded hospital facility. The loan guarantee is sought under the applicable provisions of the Hill-Burton Act. 42 U.S.C. §§ 291j–1 to 291j–7 (1971).

The complaint alleges that defendant Richardson as Secretary of Health, Education and Welfare, or those to whom the responsibility is delegated, may only approve the application of defendant St. Albans Hospital if it is found, inter alia, that the proposed project is in conformity with a state health plan adopted pursuant to the requirements of the Hill-Burton Act and the application has been approved by the state agency charged with administering the plan. The plaintiff alleges that defendants Putnam and Hunter have formally approved the application of defendant St. Albans Hospital for a Hill-Burton Act guarantee but further alleges that defendants Putnam and Hunter in so doing acted outside the authority granted to them by the Act. He contends that the project does not conform to the Vermont State Health Plan enacted under the provisions of the Hill-Burton Act and the proposed construction has not been approved by the Vermont Department of Health. The plaintiff alleges that he and others in Area I–1 will suffer immediate and irreparable injury in that the proposed construction project will increase the cost and lower the quality of medical services in the Area. Plaintiff seeks a preliminary and permanent injunction restraining the defendants Richardson, Putnam and Hunter from executing any guarantee of a loan to defendant St. Albans Hospital to finance any construction project not in conformity with the Vermont State Health Plan or lacking the approval of the Vermont Department of Health. Plaintiff also requests the court to issue a temporary restraining order and preliminary and permanent injunctions restraining the Board of Trustees of defendant St. Albans Hospital from using any funds from loans guaranteed by the Hill-Burton Act in the construction of hospital facilities.

The plaintiff initially alleged jurisdiction of this matter by virtue of the provisions of 28 U.S.C. §§ 1331(a), 1361 (1971). Subsequently, plaintiff moved to amend his complaint and alleged that the provisions of the Administrative Procedure Act provided an additional ground for jurisdiction by this court. See 5 U.S.C.A. §§ 701–705 (1971). In his motion to amend the complaint, plaintiff alleged that defendants Putnam and Hunter acted outside their authority and "abused the discretion" delegated to defendant Richardson under the provisions of 42 U.S.C. § 291j–3 (1971) and further alleged that the plaintiff is ad-

versely affected and aggrieved by the actions of the Department of Health, Education and Welfare within the meaning of 5 U.S.C. § 702 (1971).

Defendants Richardson, Putnam and Hunter, through the United States Attorney for the District of Vermont, seasonably filed a motion to dismiss on the grounds that plaintiff has no standing to bring this action, the action is barred because the United States has not consented to be sued and because the plaintiff has stated insufficient grounds to sustain jurisdiction of this court for the granting of temporary or permanent relief. Defendant St. Albans Hospital likewise has filed a motion to dismiss on the ground that the court lacks jurisdiction under the provisions of 28 U.S.C. § 1331(a) (1971) and 28 U.S.C. § 1361 (1971). Subsequently defendant Richardson filed an additional ground to his earlier motion to dismiss stating that the complaint fails to state a claim upon which relief could be granted.

A discussion was held between counsel for the parties and the court on November 10, 1972, at which time, the court, with the agreement of counsel, continued the hearing on the temporary restraining order to the 16th day of November, 1972. On the 16th day of November, 1972, a further discussion was held between counsel and the court as a result of which the plaintiff withdrew his request for a temporary restraining order and it was agreed that the court would examine the question of its jurisdiction on the basis of the pleadings of the parties, including the plaintiff's amended complaint. Subsequently, the parties filed a stipulation consenting to the amendment of the plaintiff's complaint and the amendment was duly allowed by this court on November 29, 1972.

By its interim order dated December 13, 1972, the court deferred the hearing and determination of defendants' motions until the time of trial as permitted by Rule 12(d) of the Federal Rules of Civil Procedure and consolidated plaintiff's motion for a preliminary injunction with the trial of the action on the merits as authorized by Rule 65(a)(2) of the Federal Rules of Civil Procedure. In the same order, the court requested that the parties file memoranda of law pertaining to the class action requested by the plaintiff. On December 29, 1972, the plaintiff moved to amend his complaint by deleting his request that the matter proceed as a class action, which motion was granted at the time of trial on February 13, 1973. Thereafter the matter proceeded for the benefit of the plaintiff alone.

In its answer filed December 23, 1972, defendant St. Albans Hospital included a counterclaim against the plaintiff. No evidence was heard by the court on this counterclaim as it was withdrawn by the defendant following the close of the plaintiff's case.

### FINDINGS OF FACT

There are two hospitals located in Franklin County, both of which are in the City of St. Albans. Defendant St. Albans Hospital, located on Ferris Street, was established in 1883. The Kerbs Memorial Hospital, located on Fairfield Street, was established in 1950. The hospitals are situated within five minutes driving time of one another. St. Albans is the center for Area I-1 as designated in the Vermont State Health Plan prepared pursuant to the provisions of section 604(a), Title VI of the Public Health Service Act.[1] The enabling legislation necessary to establish the Vermont Health Plan is found at 18 V.S.A. §§ 1801-14 (1968). Area I-1 as so designated consists of Franklin County, plus the towns of North Hero, Isle LaMotte and Alburg. The population of Area I-1 was 33,179 in 1970, according to the United States Census figures, and is expected to increase to 34,838 by 1977. This represents 7.4 per cent of the total population of the State of Vermont. Area I-1 is economically depressed and Franklin County has the

---

1. 42 U.S.C. § 291d(a) (1971).

highest unemployment rate of any County in the State.

The St. Albans Hospital has 57 non-conforming beds [2] and the Kerbs Hospital 91 conforming beds for a total in Area I-1 of 148 hospital beds. Both hospitals are accredited by the Joint Commission on Accreditation of Hospitals and both are Medicare certified. In April, 1971 the St. Albans Hospital filed an "Application for Project Construction" with the Vermont State Department of Health. This application was for a loan guarantee and interest subsidy under the provisions of the Hill-Burton Act [3] to enable the St. Albans Hospital to replace its non-conforming beds with 54 conforming beds. The construction program was undertaken because the State had indicated it would no longer permit the hospital to operate without replacing its non-conforming beds. The proposed construction will remedy this situation by replacing the non-conforming portion of the building (formerly a wooden home) with a new facility housing conforming beds, as well as certain new supportive services including a new surgical suite, a dietary department, a laundry, and the like.

The application was revised after it was originally submitted and was executed on behalf of the Hospital in its revised form by a duly authorized agent on December 27, 1971. On that date it was resubmitted to the State Health Department. The application proposes to finance the new construction by obtaining a loan to be guaranteed by the United States Department of Health, Education and Welfare (hereinafter referred to as HEW) to the extent of 90 per cent of the eligible cost of construction. In addition HEW will pay the holder of the loan a dollar amount sufficient to reduce the net interest rate by 3 per cent per

annum. The Connecticut General Life Insurance Company has agreed to loan the necessary funds to the St. Albans Hospital but only if the loan is guaranteed by HEW.

The stated congressional declaration of purpose of the Hill-Burton Act is "to assist the several States in the carrying out of their programs for the construction and modernization of such public or other nonprofit community hospitals and other medical facilities as may be necessary, in conjunction with existing facilities, to furnish adequate hospital, clinic, or similar services to all their people." [4] The Act provides that a state desiring to take advantage of its provisions must adopt a plan which complies with the requirements set forth in the Act.[5] The State of Vermont has adopted a state plan which meets the requirements of the Hill-Burton Act and has kept it current and in effect at all times material to this action. The plan provides that the Vermont Department of Health is the designated state agency to administer the plan's provisions and among other items specifies that 147 conforming hospital beds are needed for Area I-1.

On December 28, 1971, the revised application of the St. Albans Hospital was certified by a duly authorized agent of the Vermont Department of Health as being in compliance with the Vermont State Health Plan and shortly thereafter was submitted to the regional office of HEW in Boston, most likely early in January, 1972. One of the items to which the state agency certified was as follows: "The application is in conformity with and contains the assurances required by the State Plan and Federal Regulations." [6] The application did in fact comply with the State Plan and Federal Regulations and likewise the certification was factually correct as to the other items which were included therein.

---

2. Non-conforming beds are those located in a facility which does not meet prescribed safety standards; it does not indicate that the hospital service rendered fails to conform to accepted medical standards.

3. 42 U.S.C. §§ 291 to 291o–1 (1971).

4. *Id.* at § 291.

5. *Id.* at § 291(a).

6. Plaintiff's exhibit 1, Application for Project Construction by the St. Albans Hospital (Dec. 27, 1971).

At all times material to this action, the State of Vermont has had a Comprehensive Health Planning Agency (hereinafter referred to as CHP) as authorized by and in accordance with the provisions of Section 314 of the Public Health Service Act.[7] The function of CHP is to establish a state planning program directed toward better health services for the state, and part of this function is to plan for the most efficient use of federal money. CHP initially was asked by the Vermont Department of Health in May, 1971 if it wished to review and comment on the St. Albans construction proposal. It did not indicate a desire to do so at that time. The application subsequently was approved by the Vermont Department of Health and forwarded to the HEW regional office in Boston. Thereafter, prior to approving the application of St. Albans Hospital for construction and authorizing the loan guarantee, the Boston regional office of HEW specifically requested CHP to conduct a review and comment on the construction project. This review was also requested by the New Hampshire-Vermont Hospitalization Service (Blue Cross) which had notified "all Blue Cross Member Institutions and Selected Organizations" by memo dated May 26, 1971, as follows:

> The Blue Cross Board of Directors has felt it appropriate to document the official position of Blue Cross as related to comprehensive health planning. Upon the recommendation of the Blue Cross Executive Committee, the Board of Directors has adopted the following statement of policy.
>
> It is hereby declared to be the intention of the Blue Cross Board of Directors that, in making determinations concerning the establishment and/or continuance of contractual rela-

tions with hospitals and other providers of health services until such time as appropriate area-wide health planning agencies have been established covering the geographical area served by this Blue Cross Plan and acknowledged and accepted as such by this Board, the criteria for eligibility of building and expansion projects and the priorities therefor established in the then current State Plan (meaning the State Plan for the construction of hospital and related medical facilities for the purposes of the respective State "Hill-Burton" programs) covering the area in which such institution is located and/or such data as may be available from the State Comprehensive Health Planning Agencies shall be taken into serious consideration in making determinations of the establishment and/or continuance of such contractual relations between Blue Cross and the hospitals and other Health Care Facilities.

HEW requested this evaluation of the St. Albans construction project by CHP because HEW's financial feasibility review indicated that the loan would be in jeopardy without Blue Cross participation. In accordance with these requests CHP undertook an extensive investigation of the St. Albans Hospital construction project which included a review of the broader issues involved with the project including "the ability or inability of the community to support two hospitals; the desirability or undesirability of competition between the two facilities; and possible points of unnecessary or useful coordination between the two facilities."[8] The review of the St. Albans Hospital construction project by CHP included participation by an ad

---

7. 42 U.S.C. § 246 (1971).

8. Plaintiff's exhibit 4, Vermont Comprehensive Health Planning, Opinions and

Recommendations of the Health Resources Committee Concerning the Construction Plans of the St. Albans Hospital (June 22, 1972); *see* note 10, *infra.*

hoc committee comprised of health consumers and providers in the I–1 Area as well as the Health Resources Committee of the State Health Planning Advisory Council. Both committees held largely attended public hearings and submitted recommendations. In addition CHP compiled and published extensive "staff notes" on the proposed construction. These staff notes not only contained a summary of pertinent data supplied by the St. Albans and Kerbs Hospitals but also drew attention "to certain facts, trends, and issues" which needed "to be taken into account in any fair evaluation of the proposal under review" [9] and analyzed the three alternative courses of action available to the review committee. The "Opinions and Recommendations of the Health Resources Committee Concerning the Construction Plans of the St. Albans Hospital" of June 22, 1972, contained three recommendations,[10] the essential parts of which may be summarized as follows:

(1) that immediate steps be taken to form a joint governing board for the two hospitals and that future hospital construction in the Franklin County area be dependent on the development of such a governing board;

(2) that obstetrical services be eliminated from the proposed construction and be managed by the joint governing board at the Kerbs facility; ·

(3) that appropriate revisions be introduced into the construction plans of the St. Albans Hospital to give the new facility the flexibility to be converted to alternative health care uses.

By letter dated June 30, 1972, the St. Albans Hospital notified CHP, inter alia, as follows:

(1) The St. Albans Hospital Board of Directors' [sic] hereby consent [sic] and commits itself to cooperating with and is prepared to make a sincere effort to implement those recommendations as submitted by the CHP Review.

(2) The St. Albans Hospital Board of Directors' [sic] has agreed to delete obstetrics facilities from its construction program and this has already been accomplished.[11]

In addition to eliminating the obstetrical facilities, the St. Albans Hospital revised its construction plans to provide the necessary flexibility so that the new facility can be converted to alternative health care uses in the future if indicated. The St. Albans Hospital since its letter of June 30, 1972, has been willing to establish a joint governing board for itself and the Kerbs Hospital in the form of a corporation separate from the existing hospital corporations and organized in the manner suggested by the CHP review committee.

Since June, 1972, the Kerbs Hospital has been aware of the recommendation of CHP that its board and the St. Albans Hospital board should merge into a single new corporation. It has also been aware that the St. Albans Hospital has been willing to implement such a recommendation but, although considering the recommendation, it has failed to agree to such merger as of the date of the hearing in this matter. The St. Albans Hospital cannot implement the merger of the two boards into a separate corporation if the Kerbs Hospital is not willing to participate.

Relations between the St. Albans Hospital and the Kerbs Hospital from their inception to the present have been

9. Plaintiff's exhibit 3, Vermont Comprehensive Health Planning Staff Notes on the Construction Plans Proposed by St. Albans Hospital (June 8, 1972).

10. These recommendations are to be considered those of CHP as well. The recommendations of the ad hoc committee are attached to this opinion as an appendix.

11. Defendant St. Albans Hospital's exhibit B, letter from S. B. Collins, President of the Board of Directors of the St. Albans Hospital, to Comprehensive Health Planning Agency, June 30, 1972.

marked by bitterness and acrimony if not outright hostility. Despite the fact that the medical staffs of both hospitals are identical or nearly so, harmony between the two boards of directors has been largely lacking. In certain instances cooperation between the two facilities does exist but seemingly only when necessity so dictates. Over the years, the board of each hospital independently has made efforts directed toward merging the two facilities, providing emergency room service on a rotating basis between the two and the like. For the most part, these efforts have been unavailing because of rejection, for whatever reason, by the board of the particular hospital to whom the suggestion has been directed.

Despite the strong recommendation by CHP that the boards of the two facilities should merge into one separate entity, it appears highly improbable in light of previous experience, and the apparent present attitude of the Kerbs Hospital (demonstrated at least in part by the fact that it has arranged for the necessary financing of this litigation by the plaintiff) that merger will come to pass or is even possible in the foreseeable future.

One integrated facility housed in a single building with an adequate number of conforming beds as well as the essential supporting facilities would be the ideal solution to the medical problems engendered in St. Albans by the presence of two competing hospitals. Since this solution is not presently possible the realistic alternatives are for the St. Albans Hospital to replace its non-conforming beds or for the Kerbs Memorial Hospital to increase its number of conforming beds. Kerbs has available 91 conforming beds, considerably short of the 147 conforming beds found to be necessary in the Vermont State Health Plan. There was some dispute among the witnesses and within the CHP report as to the number of hospital beds actually required in Area I–1, but none contended that the 91 conforming beds available at Kerbs were a sufficient

number given the current nature of medical practice in St. Albans. Kerbs Hospital has no plans at the present time to increase its number of conforming beds, and therefore if the non-conforming beds at the St. Albans Hospital are not replaced there will be a shortage of beds in Area I–1 after April 30, 1973. The provisional license granted to the St. Albans Hospital expires on April 30, 1973 if the Hospital fails to commence construction by that date.

There was testimony at the trial based on newspaper accounts that financing and financial arrangements under the Hill-Burton Act shortly may become no longer available. The court is unable to find this as a fact but takes note that this remains a possibility as to the specific project of the St. Albans Hospital if delayed beyond April 30, 1973. There is also a possibility of elimination of the necessary funding in general to carry out the provisions of the Act.

Considering the alternative of shutting down the St. Albans Hospital on April 30, 1973, and creating a shortage of beds in Area I–1 or of replacing the wooden portion of the St. Albans Hospital to house new conforming beds, all witnesses, including Dr. Bruce Lindberg, the person who induced the plaintiff to bring this action, agreed that the better alternative was to build the facilities for the needed conforming beds at the St. Albans Hospital. All of the witnesses in so testifying were aware of the disadvantages of perpetuating the two hospital boards, the two emergency rooms, the operating rooms and other duplicate facilities.

Construction of the new facility housing 54 conforming beds and supporting facilities will result in a duplication of certain services furnished by each hospital. The court finds that this will result in a certain amount of inefficiency in rendering medical and hospital services to the residents of Area I–1. The court notes that this may increase the cost of medical and hospital care to the residents of the area somewhat but is unable to find that such costs will increase

either substantially or as an absolute certainty.

The court finds it preferable (and all evidence and testimony in the case was to this effect) to have an adequate number of conforming beds in Area I-1 even though such beds are located in two separate hospitals with two separate boards with a consequent duplication of certain supporting facilities than to have an inadequate number of conforming beds located in only one hospital.

The court also finds that a single corporation with a merged board of directors administering two separate hospitals could do so in a manner to promote greater efficiency and eliminate much, if not all, duplication of facilities and much, if not all, increased costs because of such duplication. The disadvantage of the two hospital facilities being physically separated by a short distance would remain with some consequent inconvenience because of this fact.

The replacement building of the St. Albans Hospital will be erected at a cost of approximately $31,000 per conforming bed. This compares most favorably with the expected cost per conforming bed of a comparable completely new facility in the amount of $45,000 to $50,000. Construction of a new facility by the St. Albans Hospital on land donated to it by the Kerbs Hospital and in close proximity to the Kerbs Hospital was at one time proposed by the Kerbs Hospital but rejected by the St. Albans Hospital. Assuming such construction became possible and the funding therefor was available, the cost of construction nevertheless would be substantially greater than the replacement of the present building as approved.

The plaintiff in this action, John A. Carman, is a resident of Swanton, Franklin County, Vermont. As a resident of Area I-1 Mr. Carman depends upon the St. Albans Hospital and the Kerbs Memorial Hospital to provide the medical facilities he needs. Mr. Carman has been a patient of Dr. Bruce A. Lindberg since 1966. Mr. Carman at one time suffered a myocardial infarction and subsequently had open heart surgery at the Medical Center Hospital of Vermont. Dr. Lindberg did not perform this surgery but has rendered medical services to the plaintiff since its performance. At the present time Mr. Carman enjoys reasonably good health and is relatively active. However, it is probable that he will require future hospitalization as the result of his heart condition. If at the time that future hospitalization is required there are two separate and distinct hospitals in the city of St. Albans, Mr. Carman, according to Dr. Lindberg, will be obliged to pay more for his medical care and treatment because of the duplication of hospital facilities in the St. Albans area. However, the amount of such additional costs is unknown nor is it possible for the court to make an intelligent estimate. This is due to the absence of any evidence as to the extent of an increase in costs because of duplication of hospital facilities, the probable length of Mr. Carman's hospitalization and the future date when it is likely to occur. The court finds as a fact that due to the nature of Mr. Carman's illness, on the strength of the testimony of his attending physician, that the cost of such future hospitalization as he may undergo will be greater in amount if there are two hospitals with duplication of facilities than if there was only one such hospital. However, the court is unable to find and does not find that other individuals who may be hospitalized in the future under similar circumstances are likely to be exposed to an increase of costs solely because of the existence of two hospitals with some duplication of facilities.

Defendant Gertrude Hunter is the duly authorized agent of defendant Elliott Richardson and because of the delegation of authority by defendant Elliott Richardson as Secretary of HEW, her action in all respects becomes and is the action of defendant Richardson. Dr. Hunter approved the St. Albans Hospital application on October 19, 1972 upon the

recommendation of her staff. The regional HEW office had before it all of the above information with the exception of that pertaining specifically to Mr. Carman, but including the Blue Cross policy statement, the CHP report and the Vermont State Health Plan. The approval by the Secretary of HEW, or his delegate, may only be given if certain conditions are fulfilled, including the making of certain findings as prescribed at 42 U.S.C. § 291j (1971). These necessary findings were made by HEW, although not in written form.

## CONCLUSIONS OF LAW AND OPINION

The plaintiff alleges that the court has jurisdiction of this civil action by virtue of 28 U.S.C. §§ 1331, 1361 (1971) and 5 U.S.C. § 702 (1971). However, all of the defendants challenge the jurisdiction of the court by appropriate motions. Therefore jurisdiction becomes the first item for our consideration.

■ 28 U.S.C. § 1331(a) (1971) confers original jurisdiction on this court in civil actions "wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States." It is obvious, and none of the parties contend otherwise, that a federal question is presented by this litigation. However, the evidence fails to disclose with the requisite degree of proof that the action meets the $10,000 requirement of the statute. If we assume, solely for purposes of testing whether the jurisdictional amount is present, that the plaintiff has established "that the construction project [of the St. Albans Hospital] will increase the cost and lower the quality of medical services available to the people of of Area I–1," as he alleges, he nevertheless has failed by any standard to develop the likely amount or value of such increased cost or decreased quality as it applies to him. No attempt was made by the plaintiff to develop a dollar value for those damages which he alleges he will suffer if St. Albans Hospital proceeds with its construction project but had he endeavored to do so we are satisfied that such damages would have been too "indirect and speculative to support federal jurisdiction." [12] The conclusion is inescapable that 28 U.S.C. § 1331(a) (1971) will not support the jurisdiction of this court as to the plaintiff's claim against any of the defendants.

■ Based on the allegations of his complaint and the evidence adduced on trial, plaintiff's claim that 28 U.S.C. § 1361 (1971) confers jurisdiction upon this court must also fail. Original jurisdiction in "any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty to the plaintiff" is bestowed upon the district courts by section 1361. Section 1361 clearly does not apply to the St. Albans Hospital as a private institution and for this elemental reason there is no jurisdiction as to it under this section. However, the remaining defendants are officers or employees of an Agency of the United States against whom mandamus will lie under appropriate circumstances.

"Section 1361 only creates a means of enforcing a duty owed to one by a government official." [13] Nevertheless "official conduct may have gone so far beyond any rational exercise of discretion as to call for mandamus even when the action is within the letter of the authority granted." [14]

---

12. Kheel v. Port of New York Authority, 457 F.2d 46, 49 (2d Cir.), cert. denied, 409 U.S. 983, 93 S.Ct. 324, 34 L.Ed.2d 248 (1972); see Rosado v. Wyman, 414 F.2d 170, 176 (2d Cir. 1969), rev'd on other grounds, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970).

13. Leonhard v. Mitchell, 473 F.2d 709, 713 (2d Cir. 1973).

14. Id., quoting United States ex rel. Schonbrun v. Commanding Officer, 403 F.2d 371, 374 (2d Cir. 1968), cert. denied, 394 U.S. 929, 89 S.Ct. 1195, 22 L.Ed.2d 460 (1969).

The plaintiff's complaint alleges that defendants Putnam and Hunter, authorized agents of defendant Richardson in passing upon Hill-Burton applications from hospitals located in Vermont and other states in Region I, acted outside their authority and abused the discretion delegated to defendant Richardson under 42 U.S.C. § 291j–3 (1971) for the following reasons:

(a) The construction project proposed in the St. Albans Hospital's application is not in conformity with the Vermont State Health Plan . . . and

(b) The application has not been approved by the Vermont Department of Health.

Thus the plaintiff seeks to enjoin the federal employees "from signing the guarantee requested in the Hill-Burton application filed by the defendant St. Albans Hospital, or if the guarantee has already been signed, a preliminary injunction directing the above-named officials to withdraw the guarantee during the pendency of this action . . . ." Although the plaintiff uses language in his complaint which states that the defendants abused the discretion delegated to the Secretary by the Hill-Burton Act, in actuality he alleges solely that the HEW defendants disregarded a mandatory duty imposed upon them by the statute to disapprove the application of the St. Albans Hospital when it was not in conformity with the State Health Plan and the application had not been approved by the Vermont Department of Health. Accordingly, the plaintiff seeks not to compel the federal officials to perform a duty owed to him but rather to undo an act already performed which he alleges violates the plain duty of said officials under the statute. Mandamus will not lie "to direct the exercise of judgment or discretion in a particular way nor to direct the retraction or reversal of action already taken in the exercise of either." [15] *Wilbur* does not decide under the factual situation presented there whether mandamus will lie to direct the retraction or reversal of a particular action which was clearly contrary to the non-discretionary mandate of a particular statute. It is unnecessary for us to determine whether mandamus is available to correct as well as compel allegedly erroneous administrative action in this suit as the evidence adduced at trial conclusively demonstrates that the application of the St. Albans Hospital in fact was in conformity with the State Health Plan and had been approved by the Vermont Department of Health. Section 1361 does not confer jurisdiction upon this court as to any of the defendants.

The plaintiff also alleges jurisdiction by virtue of the provisions of the judicial review section of the Administrative Procedure Act.[16] Specifically, the plaintiff invokes the provisions of section 702 to lay his case before the court. Section 702 reads as follows:

A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.

On the strength of Sierra Club v. Morton,[17] we find that the plaintiff has the requisite standing to invoke the jurisdiction of this court. The plaintiff alleges the construction project proposed by St. Albans Hospital "will increase the cost and lower the quality of medical services" available to the people of the area because Area I–1 in which the plaintiff resides will continue to support two hospitals with duplicate facilities. This allegation of economic "injury in fact" places the plaintiff in the category of those alleged to be injured by the decision of the federal defendants. We believe the test laid down by the Supreme Court in Sierra Club v. Morton requires

---

15. Wilbur v. United States ex rel. Kadrie, 281 U.S. 206, 218, 50 S.Ct. 320, 324, 74 L. Ed. 809 (1930).

16. 5 U.S.C. §§ 701–706 (1971).

17. 405 U.S. 727, 93 S.Ct. 1361, 31 L.Ed. 2d 636 (1972).

no more than that. In this regard, we reject the Government's contention that the action challenged by the plaintiff is "committed to agency discretion by law" and for that reason not the proper subject of judicial review because of the provisions of 5 U.S.C. § 701(a)(2) (1971).

▇ Without deciding whether the provisions of 42 U.S.C. § 291h (1971) provide judicial review of applications for loan guarantees under 42 U.S.C. § 291j–3 (1971), we likewise reject the Government's contention that such review is limited solely to appeals by the state directly to the United States Court of Appeals for the circuit in which the state is located. In our view, the language of the statute specifically authorizing appeals to the circuit courts for states seeking judicial review does not foreclose appropriate review for citizens of states who claim to have been aggrieved by administrative action. We agree with the plaintiff that it would be too nice a distinction to suggest that the Hill-Burton Act was only intended to protect the interest of the several states and not the interests of "all their people" in adequate medical care. The Congressional declaration of purpose prefacing the provisions of the Hill-Burton Act clearly establishes this.[18] In reaching the conclusion which we have, we decline to follow the case upon which the Government relies in its brief, Paducah Junior College v. Secretary of Health, Education and Welfare.[19] We tend in the direction of the cases cited by the plaintiff in support of his position.[20]

The United States Court of Appeals for the District of Columbia in Medical Committee for Human Rights v. Securities and Exchange Comm'n,[21] quoted from Abbott Laboratories v. Gardner,[22] in stating that judicial review of final agency action by an aggrieved party will not be cut off unless there is persuasive reason to believe that such was the purpose of Congress.[23] In explicating the rationale for the rule of presumptive standing, the court also quoted from Professor Jaffe:

> Congress, barring constitutional impediments, may, indeed, exclude judicial review. But judicial review is the rule * * * It is a basic right; it is a traditional power and the intention to exclude it must be made specifically manifest. * * *
>
> * * * * * *
>
> * * * The mere fact that some acts are made reviewable should not suffice to support an implication of exclusion as to others. The right to review is too important to be excluded on such slender and indeterminate evidence of legislative intent.[24]

Although we find that the Administrative Procedure Act confers standing against the federal defendants, it is manifestly clear that it confers no standing upon him to maintain his action against the St. Albans Hospital. The reasons for this are abundantly obvious. The St. Albans Hospital and each HEW defendant have moved to dismiss the complaint for failure to state a cause of action upon which relief can be granted but have presented no argu-

18. *See* 42 U.S.C. § 291 (1971).

19. 255 F.Supp. 147 (W.D.Ky.1966).

20. *See* Medical Comm. for Human Rights v. Securities and Exchange Comm'n, 139 U.S.App.D.C. 226, 432 F.2d 659 (1970), vacated as moot, 404 U.S. 403, 92 S.Ct. 577, 30 L.Ed.2d 560 (1972); Environmental Defense Fund, Inc. v. Hardin, 138 U.S.App.D.C. 391, 428 F.2d 1093 (1970); Peoples v. United States Dep't of Agr., 138 U.S.App.D.C. 291, 427 F.2d 561 (1970); Scanwell Laboratories, Inc. v.

Schaffer, 137 U.S.App.D.C. 371, 424 F.2d 859 (1970).

21. 139 U.S.App.D.C. 226, 432 F.2d 659 (1970), vacated as moot, 404 U.S. 403, 92 S.Ct. 577, 30 L.Ed.2d 560 (1972).

22. 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967).

23. 432 F.2d at 666.

24. *Id., quoting* L. Jaffe, Judicial Control of Administrative Action 346, 357 (1965).

ments to the court in support of this ground for dismissal. We find that this contention is without merit as the plaintiff is entitled to seek declaratory and injunctive relief by virtue of the provisions of the Administrative Procedure Act [25] as the Hill-Burton Act does not preclude judicial review as we have found above. We find in this regard that the agency action is not committed to agency discretion by law and hence the exclusions set forth in 5 U.S.C. § 701 (1971) do not apply to this action.

The federal defendants also interpose sovereign immunity as a bar to this action and as an additional ground for dismissal of the plaintiff's action as to them. There is no uniformity of application of this doctrine reflected in the cases in the various circuits. Moreover, in Littell v. Morton [26] the Fourth Circuit noted that the Supreme Court has decided a number of cases under the APA in which it seemingly has ignored the doctrine of sovereign immunity.[27] The Court of Appeals for the Second Circuit has stated that "the A. P. A. constitutes a waiver of sovereign immunity concerning those claims which come within its scope."[28] Since we hold that this action comes within the scope of the Administrative Procedure Act, we find a waiver of sovereign immunity on the strength of Kletschka.

Since we now have examined the jurisdictional claims and conclude that this court does not have jurisdiction over St. Albans Hospital, we dismiss as to it. We also dismiss upon our own motion at this juncture as to defendant Harold Putnam as no evidence was presented concerning any involvement by him in this controversy and his continuing presence is needless to any determination of the matter.

We next turn to the merits of the plaintiff's claim against defendants Richardson and Hunter. By their pleadings, the parties agree that defendant Hunter is authorized to act for defendant Richardson in passing upon Hill-Burton applications from hospitals located in Vermont. This, of course, includes the instant application of the St. Albans Hospital. No claim is made that defendant Richardson acted independently in this matter or that any action was required of him solely as Secretary of Health, Education and Welfare and accordingly, we treat all actions of defendant Hunter by delegation as the actions of defendant Richardson.

The only claim in the plaintiff's complaint of noncompliance with the statute or abuse of discretion vested with the Secretary is that the construction application of the St. Albans Hospital did not conform to the Vermont State Health Plan and the application had not been approved by the Department of Health for the State of Vermont. However, as indicated above, the evidence conclusively established, and the plaintiff by his requests for findings agrees, that the application was approved by the Vermont Department of Health.

We have also found that the construction project of the St. Albans Hospital realistically conforms with the Vermont State Health Plan. In reaching this conclusion we have considered the goals and general policy recited in the plan [29] but the evidence demonstrates certain of the stated goals to be unattainable in the foreseeable future. Under these circumstances the desirability of eliminat-

25. 5 U.S.C. § 703 (1971).

26. 445 F.2d 1207 (4th Cir. 1971).

27. *Id.* at 1212, *citing* Hawaii v. Gordon, 373 U.S. 57, 83 S.Ct. 1052, 10 L.Ed.2d 191 (1963) ; Fresno v. California, 372 U.S. 627, 83 S.Ct. 996, 10 L.Ed.2d 28 (1963) ; Dugan v. Rank, 372 U.S. 609, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963) ; Malone v. Bowdoin, 369 U.S. 643, 82 S.Ct. 980, 8 L.Ed.2d 168 (1962) ; Larson v. Domestic and Foreign Commerce Corp., 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949).

28. Kletschka v. Driver, 411 F.2d 436, 445 (2d Cir. 1969).

29. To make the best use of available federal funds, and to avoid unnecessary duplication of scarce personnel and expensive equipment, existing non-conforming hospitals located near a modern facility should cease to operate;

ing duplicate hospital facilities in Area I–1 as an ideal solution must yield to the practicalities of the situation as they presently exist.

The plaintiff claims however that Dr. Hunter did not find *on the basis of an independent review* that the proposed construction was in conformity with the State Health Plan, but rather her approval of the application of the St. Albans Hospital was *based solely on the certification of the Vermont Department of Health* that the proposed construction conformed to the requirements of the State Health Plan (emphasis supplied). A further narrow issue raised by the plaintiff is that the Secretary through his authorized subordinates failed to make written findings of any of the conditions for approval of a loan guarantee specified by 42 U.S.C. § 291j–3(b) (1971). These issues were not raised by the plaintiff in his pleadings but it became obvious at the time of trial that if he hoped to prevail in this lawsuit it largely would be on the basis that defendant Hunter failed to determine independently that the application met the requirements of the statute and that such failure was necessarily fatal to her approval of the application. Although these issues are not framed squarely by the pleadings and the plaintiff has not sought to amend his complaint to allege them, for purposes of this opinion we consider them as though pleaded by the plaintiff. We are satisfied that no prejudice results to the defendants by proceeding in this manner because it was made clear by the plaintiff at trial, and manifest from his evidence, that this was a ground upon which he relied heavily to support his claim.

The Secretary may approve the application for a loan guarantee only if certain conditions specified in 42 U.S.C. § 291j–3 (1971) are met. For purposes of this action the relevant part of this is section 291j–3(b)(2). This subsection provides that the Secretary is to make the findings required by clauses (1) through (4) of section 291e(b) of title 42. Clauses (1) through (4) read as follows:

"The Surgeon General [30] shall approve such application if . . . [he] finds (1) that the application contains such reasonable assurance as to title, financial support, and payment of prevailing rates of wages; (2) that the plans and specifications are in accord with the regulations prescribed pursuant to section 291c of this title; [31] (3) that the application is in conformity with the State plan . . . and (4) that the application has been approved and recommended by the State agency, opportunity has been provided, prior to such approval and recommendation, for consideration of the project by the public or nonprofit private agency or organization which has developed the comprehensive regional, metropolitan area, or other local area plan or plans referred to in section 246(b) of this title covering the area in

---

federal funding of two or more competing general hospitals in the same community or a few miles apart is not justified.
If these duplicating facilities are nonconforming, a merger of the two administrations should be accomplished and a replacement hospital developed if the need is indicated; if the facilities are already conforming structures, operation under a single administration is urged and the various services centralized at one unit or the other so that no duplication exists.
Plaintiff's exhibit 2, Vermont State Health Plan for Hospitals and Related Health Services, 19–20 (1972).

30. The Office of the Surgeon General was abolished by section 3 of 1966 Reorg. Plan No. 3 effective June 25, 1966, 31 F.R. 8855, 80 Stat. 1610, and all functions thereof were transferred to the Secretary of Health, Education and Welfare by section 1 of Plan No. 3, which is set out as a note following section 202 of title 42.

31. The regulations adopted pursuant to section 291c begin at 42 C.F.R. § 53.1 (1972). It is not alleged that the Secretary specifically violated any of these regulations and as such they are not considered here.

which such project is to be located [32]. . . ."

■ The plaintiff contends that the decision of Dr. Hunter to approve the application of the St. Albans Hospital was an abuse of discretion vested in the Secretary of HEW and delegated to her. However we find, construing the evidence presented on trial in the light most favorable to the plaintiff, that her decision was well within the range of her discretion. This is clear when viewed in the context of the State Health Plan, the loan guarantee application of the St. Albans Hospital, and the review, comments and recommendations of CHP. Indeed, HEW's decision on the application was withheld pending receipt of CHP's report which it had specifically requested and the application was not approved until after the report had been received. Defendant Hunter had before her when she made her decision all relevant facts both good and bad relating to the modernization [33] of the St. Albans Hospital as well as the impact which such construction would have upon general health and medical care in Area I–1. In her consideration, Dr. Hunter was well aware that approval of the application would perpetuate duplicate hospital facilities and that the boards of the two competing hospitals had failed to merge into a single independent entity as recommended by CHP. The testimony of each witness at the trial amply substantiated that the bounds of Dr. Hunter's discretion were not exceeded. Every witness who had the question put to him unequivocally stated that Area I–1 required additional conforming beds and two hospitals with some duplication of facilities was infinitely preferable to one hospital with an inadequate number of conforming beds. This view was shared by plaintiff's principal witness, Dr. Bruce A. Lindberg, a staunch advocate of the position that the area would best be served by only one adequate and fully integrated hospital. Indeed, given all of the facts of this case, St. Albans Hospital would appear to have an excellent basis for arguing that there was an abuse of discretion by HEW if the loan guarantee had not been approved under the circumstances.

The remaining and the most troublesome issue is whether Dr. Hunter was required to make formal findings which complied with the provisions of 42 U.S. C. § 291j–3(b) (1971) and if so whether the findings needed to be reduced to writing.

Approval by Dr. Hunter does not denote in itself that the required findings were made, or if the findings were made that statutory requirements were satisfied. Mr. John Ozog was the regional HEW employee most involved with the St. Albans Hospital application. Mr. Ozog was Dr. Hunter's assistant most directly concerned with the processing of Hill-Burton applications. He reported directly to Dr. Hunter and had discussed this specific application with her. He was intimately familiar with the Vermont State Health Plan, its requirements and objectives as well as the requirements of the Hill-Burton Act. Mr. Ozog testified that no specific written findings were prepared in connection with the agency's approval of the application, but that the findings mandated for approval of the loan guarantee were in fact made. Mr. Ozog testified that in this instance notification of the approval communicated to St. Albans Hospital established that all findings and determinations required by the statute had been made.

■ There is little question but what it would be preferable for HEW in approving applications for loans or loan guarantees under the Hill-Burton Act to expressly recite that such findings and determinations required by the act in fact had been made. This would seem

32. The Vermont Comprehensive Health Planning Agency is the appropriate agency in Vermont.

33. This term by regulation gives a priority in such projects to those areas with a relatively lower number of conforming beds as compared to the overall number of beds available or needed. 42 C.F.R. § 53.87 (1972).

to be required in any instance in which approval rests in whole or in part on a disputed factual basis. However, in this case the facts crucial to the determination were clear and undisputed at the time the application was approved. It is manifest from the evidence that the other specific conditions of the act which had to be met were complied with and the plaintiff does not contend seriously to the contrary. We decide on the evidence with reference to the application of St. Albans Hospital that the findings required by the Hill-Burton Act were properly made by HEW. This being the case, the only remaining item for consideration is whether it was necessary for the Secretary through his representative to reduce his findings to writing. We could withhold our decision even at this late date until the Secretary or his delegate reduced to writing those findings already made which would resolve any question as to technical compliance with the requirement for approval of the application laid down by the provisions of the Hill-Burton Act. However this would be a needless step in view of our determination that there was literal compliance with all requirements of the act necessary for approval and which served as a basis for Dr. Hunter's approval. We decide on the facts in this matter that it was unnecessary for HEW to reduce the findings which it made to writing.

Our determination disposes of this matter in favor of the defendants and we need say no more. However, we cannot resist the opportunity to add our voice to those of others suggesting that the Boards of the two hospitals forget their past differences, heal their wounds and merge the existing two hospital corporations into a new single corporate entity with a jointly composed governing board. In this way, maximum utilization of both hospital facilities is likely to be achieved in the future with the necessary flexibility to adopt to changing health requirements and assure the highest quality of medical care to all the residents of the area.

Wherefore, for the reasons recited, the action is dismissed as to defendants St. Albans Hospital and Harold Putnam, plaintiff's request for a preliminary and permanent injunction is denied and judgment is entered for defendants Richardson and Hunter.

## APPENDIX

### FROM THE COMMUNITY STANDPOINT

AGREED

1. We cannot afford to lose any of the existing beds, be they conforming or non-conforming.
2. St. Albans Hospital administratively has proved itself efficient over the years. It has maintained a low patient day cost.
3. There is a need for a physical plant to house allied health services.

These conclusions have led to our recommendations:

The findings of the *Ad Hoc* Committee of St. Albans Hospital:

It is unfortunate that the situation has developed that this community is in. It is more unfortunate that there has not been a greater effort to give the community what it needs in the line of medical services.

We cannot in good conscience recommend anything other than the construction of a facility in the location that St. Albans Hospital wants.

We believe there is little hope of the two boards getting together to work together.

We feel the community will be better off if the St. Albans Hospital is going to use the old building for combined medical related services.

Signed by:

Orman E. Croft
Marjorie J. Gadbois
M. Hayden Janes
Sue Adams
Richard H. Carr
Joseph Beauregard, M.D.
Vernon P. Rich