## SECURITIES AND EXCHANGE COMMISSION *v.* MEDICAL COMMITTEE FOR HUMAN RIGHTS

No. 70–61.   Argued November 10, 1971—Decided January 10, 1972

*Solicitor General Griswold* argued the cause for petitioner.   With him on the briefs were *Daniel M. Friedman, William Terry Bray, Philip A. Loomis, Jr., David Ferber,* and *Richard E. Nathan.*

*Roberts B. Owen* argued the cause for respondent. With him on the brief was *Michael Boudin.*

*Roger S. Foster* and *Charles R. Halpern* filed a brief for the Project on Corporate Responsibility as *amicus curiae* urging affirmance.

MR. JUSTICE MARSHALL delivered the opinion of the Court.

The Medical Committee for Human Rights acquired by gift five shares of stock in Dow Chemical Co. In March 1968, the Committee's national chairman wrote a letter to the company expressing concern over its policy with respect to the production and sale of napalm. The letter also requested that there be included in the company's proxy statement for 1968 a proposal to amend Dow's Certificate of Incorporation to prohibit the sale of napalm unless the purchaser gives reasonable assurance that the napalm will not be used against human beings. Dow replied that the proposal was too late for inclusion in the 1968 proxy statement and for discussion at that year's annual meeting, but that it would be reconsidered the following year.

In an exchange of letters with Dow in 1969, the Committee indicated its belief that it had a right under Rule 14a–8 of the Securities and Exchange Commission, 17 CFR § 240.14a–8 (1970) (promulgated pursuant to § 14 (a) of the Securities Exchange Act of 1934, 48 Stat. 895, as amended, 15 U. S. C. § 78n (a)), to have its proposal included in the company's proxy statement for consideration by all shareholders. On February 7, 1969, Dow responded that it intended to omit the proposal (somewhat modified) from the 1969 statement under the authority of subsections of the SEC Rule relied on by the Committee that permitted omission of shareholder proposals under two sets of circumstances:

> § 240.14a–8 (c)(2)—"If it clearly appears that the proposal is submitted by the security holder primarily for the purpose of enforcing a personal claim or redressing a personal grievance against the issuer or its management, or primarily for the purpose of promoting general economic, political, racial, religious, social or similar causes"; or

§ 240.14a–8 (c)(5)—"If the proposal consists of a recommendation or request that the management take action with respect to a matter relating to the conduct of the ordinary business operations of the issuer."

The Committee requested that Dow's decision be reviewed by the staff of the SEC. On February 18, 1969, the Chief Counsel for the Division of Corporation Finance wrote both Dow and the Committee to inform them that "this Division will not recommend any action to the Commission if this proposal is omitted from the management's proxy material." App. 21. The SEC Commissioners granted a request by the Committee that they review the Division's decision and affirmed it. App. 43. The Committee then sought and obtained review of the Commission's decision in the United States Court of Appeals for the District of Columbia Circuit.

On July 8, 1970, the Court of Appeals held that the decision of the SEC was reviewable under § 25 (a) of the Securities Exchange Act of 1934, 15 U. S. C. § 78y (a); that while review of Dow's decision was clearly available in district court, review of the SEC's decision could also be obtained in a court of appeals; that the validity of the Commission's determination was extremely dubious, especially in light of its failure to state reasons supporting its conclusion; and that the case should be remanded to the Commission for reconsideration and a statement of reasons. 139 U. S. App. D. C. 226, 432 F. 2d 659. The Commission petitioned for review here, and we granted certiorari on March 22, 1971. 401 U. S. 973.

Events have taken place, subsequent to the decision by the court below, and some subsequent to our decision to grant certiorari, that require that we dismiss this case on the ground that it has now become moot. In January 1971, the Medical Committee again submitted

its napalm resolution for inclusion in Dow's 1971 proxy statement. This time Dow acquiesced in the Committee's request and included the proposal. At the annual stockholder's meeting in May 1971, Dow's shareholders voted on the Committee's proposal. Less than 3% of all voting shareholders supported it, and pursuant to Rule 14a–8 (c)(4)(i), 17 CFR § 240.14a–8 (c)(4)(i), Dow may exclude the same or substantially the same proposal from its proxy materials for the next three years. We find that this series of events has mooted the controversy.

Respondent argues that it will continue to urge the adoption of the proposal and its inclusion in proxy statements, and that it is likely that Dow will reject inclusion in the future as it has in the past. It is true that in permitting the proposal to be included in the 1971 proxy statement Dow stated that it adhered to its opinion that the proposal might properly be omitted and that its inclusion was without prejudice to future exclusion. However, this does not create the controversy that is necessary for us to retain jurisdiction to decide the merits. Whether or not the Committee will actually resubmit its proposal or a similar one in 1974 is purely a matter of conjecture at this point, as is whether or not Dow will accept it. If Dow were likely to repeat its allegedly illegal conduct, the case would not be moot. See *Walling* v. *Helmerich & Payne*, 323 U. S. 37, 43 (1944); *United States* v. *W. T. Grant Co.*, 345 U. S. 629, 632–633 (1953). However, in light of the meager support the proposal attracted, we can only speculate that Dow will continue to include the proposal when it again becomes eligible for inclusion, rather than to repeat this litigation. Thus, we find that "the allegedly wrongful behavior could not reasonably be expected to recur." *United States* v. *Phosphate Export Assn.*, 393 U. S. 199, 203 (1968). The case is therefore moot.

"[I]t is well settled that federal courts may act only in the context of a justiciable case or controversy." *Benton* v. *Maryland,* 395 U. S. 784, 788 (1969). "Our lack of jurisdiction to review moot cases derives from the requirement of Article III of the Constitution under which the exercise of judicial power depends upon the existence of a case or controversy." *Liner* v. *Jafco, Inc.,* 375 U. S. 301, 306 n. 3 (1964); cf. *Doremus* v. *Board of Education,* 342 U. S. 429, 434 (1952).

Accordingly, the judgment of the Court of Appeals is vacated and the case is remanded to that court for dismissal.

MR. JUSTICE POWELL and MR. JUSTICE REHNQUIST took no part in the consideration or decision of this case.

MR. JUSTICE DOUGLAS, dissenting.

With all respect, I must dissent from the judgment of the Court that this case has become moot because the Dow Chemical Co. acquiesced in the decision of the Court of Appeals below. The underlying dispute in this case is essentially a private one, between Dow and the Medical Committee for Human Rights, though it has large public overtones. In 1969, Dow refused to submit to its shareholders the Medical Committee's proposal that Dow amend its corporate charter to forbid the manufacture of napalm. Dow refused again in 1970. Only in 1971, after the decision of the Court of Appeals now under review, did Dow permit such a proposal to be submitted for a vote. In doing so, however, Dow resolutely affirmed its right to reject the proposal at any future time.

This gratuitous conduct did not, in my view, moot the controversy. "Mere voluntary cessation of allegedly illegal conduct does not moot a case." *United States* v. *Phosphate Export Assn.,* 393 U. S. 199, 203. If it could,

then a defendant would always be "free to return to his old ways." *United States* v. *W. T. Grant Co.,* 345 U. S. 629, 632.[1]

But it is said that because of the poor showing made by the proposal when finally submitted, Dow could refuse to resubmit it for three years under SEC proxy rules not at issue in this case. *Ante,* at 406. The Court suggests that it is "purely a matter of conjecture" that the proposal will again be submitted at the expiration of this period, and that Dow will attempt again to reject it. The Court seems to think that Dow's best strategy, given the proposal's poor showing, is to let it go to a vote, rather than undertake protracted litigation. *Ibid.*

This assumption, however, is not only baseless, it is irrelevant. In *Grant, supra,* an antitrust violation was charged because of an interlocking directorate. In response to the suits, the interlocking directors resigned,

---

[1] See also *Walling* v. *Helmerich & Payne,* 323 U. S. 37, where we held that a case involving the legality of "split-day contracts" under the Fair Labor Standards Act was not rendered moot by the defendant company's abandonment of the contracts during the litigation. "Despite respondent's voluntary cessation of the challenged conduct, a controversy between the parties over the legality of the split-day plan still remains. . . . Respondent has consistently urged the validity of the split-day plan and would presumably be free to resume the use of this illegal plan were not some effective restraint made." *Id.,* at 43.

The vitality of this controversy was recognized by the Solicitor General, himself, virtually to the moment of oral argument. While he has abruptly reversed his position, the force of his prior argument remains undiminished. Citing the above quotation from *Walling,* he said:

"The same reasoning [as that of the *Walling* Court] applies to the dispute between respondent and Dow over whether the latter is required to distribute to its shareholders the Committee's proposal. Dow continues to insist that it is not required to distribute the proposal, and even if it does so this year [1971] and the proposal is defeated, Dow may reject it in future years." First Reply Brief for Petitioner 5.

and defendant companies represented to the court their intention not to revive the interlock. We disposed of this argument in summary fashion. "Such a profession does not suffice to make a case moot." *Id.,* at 633. Here, Dow has not even made the minimal representation we rejected in *Grant,* nor is it likely to do so.

This is not a controversy that could not arise again for decades, *Golden* v. *Zwickler,* 394 U. S. 103, or a controversy whose decision could have no possible future effect on the parties, *Atherton Mills* v. *Johnston,* 259 U. S. 13. Dow has for the past four years fought tooth and nail its obligation to include this shareholder proposal. While "[a] case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur," *Phosphate Export Assn., supra,* at 203, that is hardly the situation here.

While this litigation is not formally between Dow and the Medical Committee, but between the SEC and the Medical Committee, it does involve a whole panoply of substantive [2] and procedural [3] rights in connection with a corporation's obligation to include shareholder proposals in proxy materials. The modern super-corporations, of which Dow is one, wield immense, virtually unchecked, power. Some say [4] that they are "private governments," whose decisions affect the lives of us all. [5] The philosophy of our times, I think, requires that such

---

[2] See generally Note, 84 Harv. L. Rev. 700 (1971).

[3] See generally Note, 84 Harv. L. Rev. 835 (1971).

[4] See, *e. g.,* Miller, Toward the "Techno-Corporate" State?—An Essay in American Constitutionalism, 14 Vill. L. Rev. 1 (1968); J. Galbraith, The New Industrial State (1967); A. Berle, Economic Power and the Free Society (1957).

[5] A. Berle has suggested, for example, that

"The recession of 1956 was in part due to the fact that the three principal automobile manufacturers, General Motors, Ford, and Chrysler, sold 8 million cars in the previous year. *The National*

enterprises be held to a higher standard than that of the "morals of the marketplace" which exalts a single-minded, myopic determination to maximize profits as the traditional be-all and end-all of corporate concern. The "public interest in having the legality of the practices settled, militates against a mootness conclusion." *Grant, supra,* at 632.

There is no reason to assume Dow's antipathy to the inclusion of this shareholder proposal will be any less in 1974 than it is today. Perhaps Dow will adopt the advice given to it by the Court. But it is just as likely to decide its superior financial position makes continued litigation the preferable alternative, which may now be conducted under proxy rules more favorable to corporate management [6] than are the present rules.

---

*City Bank Economic Review* estimated the 'normal' market for cars at the time at 6 million. The following year the motorcar companies sold only 4 million cars, and, naturally, purchased far less from their suppliers of raw materials, glass, et cetera. The effect on employment was severe." The Three Faces of Power 31 n. 2 (1967).

[6] In this regard, it should be noted that the SEC has recently proposed amendments to its proxy rules which might strengthen Dow's hand. The new rules would permit a company *to refuse to submit for a shareholder vote* any proposal which, *inter alia,*

"(ii) consists of a recommendation, request or mandate that action be taken with respect to any matter, including a general economic, political, racial, religious, social or similar cause, that is not significantly related to the business of the issuer or is not within the control of the issuer." Proposed amendment to Rule 14a–8 (c)(2), Securities Exchange Act Release No. 9432, Dec. 22, 1971.

There is substantial sentiment, however, for a more liberal approach to shareholder proxy proposals than is evidenced by the current, much less the proposed, rules. Senator Muskie, for example, introduced a bill in the last Congress, entitled the "Corporate Participation Act," which would have, *inter alia,* barred exclusion of a shareholder proposal "on the ground that such proposal may involve economic, political, racial, religious, or similar issues, unless

This case now joins a growing list of monuments to the present Court's abdication of its constitutional responsibility to decide cases properly within its jurisdiction. See, *e. g., Picard* v. *Connor, ante,* p. 270, at 278 (DOUGLAS, J., dissenting); *North Carolina* v. *Rice, ante,* p. 244, at 248 (DOUGLAS, J., dissenting statement); *McClanahan* v. *Morauer & Hartzell, ante,* p. 16, at 17 (DOUGLAS, J., dissenting). Once again, I dissent.

---

the matter or action proposed is not within the control of the issuer." S. 4003, § 2, 91st Cong., 2d Sess. For the view that a corporation should be required to include any shareholder proposal which is a "proper subject" for shareholder action under applicable state law, see Chisum, Napalm, Proxy Proposals and the SEC, 12 Ariz. L. Rev. 463 (1970). See also Note, 84 Harv. L. Rev. 700 (1971).