**CLIMAX MOLYBDENUM COMPANY, A DIVISION OF AMAX INC., Petitioner,**

v.

**SECRETARY OF LABOR, MINE SAFETY AND HEALTH ADMINISTRATION (MSHA), Federal Mine Safety and Health Review Commission, and Oil, Chemical, and Atomic Workers' International Union, Local 2-24410, Respondents.**

No. 80-2187.

United States Court of Appeals,
Tenth Circuit.

March 21, 1983.

Barrett, Circuit Judge, concurred in part and dissented in part and filed opinion.

---

McKAY, Circuit Judge.

Climax Molybdenum Company seeks review of a decision of the Federal Mine Safety and Health Review Commission. The Commission affirmed an administrative law judge's dismissal of a safety citation review proceeding and denied Climax's request for a declaratory order confirming the adequacy of safety measures at the Climax mine. The Commission also denied Climax's request that the litigation expenses Climax had incurred be set off against future civil penalties assessed against Climax.

Hugh A. Burns, Denver, Colo. (Phillip S. Figa, Denver, Colo., with him on brief), of Burns & Figa, P.C., Denver, Colo., for petitioner.

Linda L. Leasure, Dept. of Labor, Washington, D.C. (T. Timothy Ryan, Jr., Sol., Cynthia L. Attwood, Acting Associate Sol., Michael A. McCord, Counsel, Appellate Litigation, and Nancy S. Hyde, Washington, D.C., on brief), for respondent Secretary of Labor.

Robert E. Wages, Denver, Colo., for respondent Oil, Chemical and Atomic Workers Intern. Union Local 2–24410.

Before BARRETT, McKAY and SEYMOUR, Circuit Judges.

## I

The dispute in this appeal grew out of an inspection of the Climax mine in 1978 by the United States Department of Labor, Mine Safety and Health Administration. As a result of the inspection, Climax received four citations under section 104(a)[1] of the Federal Mine Safety and Health Act of 1977 ("FMSHA"), codified in part at 30 U.S.C. §§ 801–825 (Supp. IV 1980). The citations alleged that certain areas of the mine exhibited excessive concentrations of silica-bearing dust in violation of federal mine safety regulations.[2]

Climax sought administrative review of the citations, *see* FMSHA § 105(d), 30

1. Section 104(a) provides in pertinent part as follows:

> If, upon inspection or investigation, the Secretary or his authorized representative believes that an operator of a coal or other mine subject to this chapter has violated this chapter, or any mandatory health or safety standard, rule, order, or regulation promulgated pursuant to this chapter, he shall, with reasonable promptness, issue a citation to the operator.

30 U.S.C. § 814(a) (Supp. IV 1980).

2. The citations alleged that Climax was in violation of the following air quality regulations:

> Except as permitted by § 57.5–5: (a) ... [T]he exposure to airborne contaminants shall not exceed, on the basis of a time weighted average, the threshold limit values adopted by the American Conference of Governmental Industrial Hygienists, as set forth and explained in the 1973 edition of the Conference's publication, entitled "TLV's Thresh-

old Limit Values for Chemical Substances in Workroom Air Adopted by ACGIH for 1973," pages 1 through 54, which are hereby incorporated by reference and made a part hereof.... Excursions above the listed thresholds shall not be of a greater magnitude than is characterized as permissible by the Conference.

30 C.F.R. § 57.5–1 (1982).

> Control of employee exposure to harmful contaminants shall be, insofar as feasible, by prevention of contamination, removal by exhaust ventilation, or by dilution with uncontaminated air. However, where accepted engineering control measures have not been developed ... employees may work for reasonable periods of time in concentrations of airborne contaminants exceeding permissible levels if they are protected by appropriate respiratory protective equipment.

30 C.F.R. § 57.5–5 (1982).

U.S.C. § 815(d), denying that it had violated any dust standard and claiming that it was using feasible engineering controls. Climax also asserted that the Commission should have indicated what other engineering controls would be necessary to comply with federal regulations.

From December 1978 to June 1979, Climax and the government prepared for trial before an administrative law judge (the "ALJ"). However, shortly before the trial, the government vacated the citations and moved to dismiss the administrative proceeding, stating that the government could not prove that Climax was not using all feasible controls. Climax did not object to the vacation of the citations; however, Climax contended that the administrative proceeding should go forward because Climax needed and was entitled to an interpretation of the standard for complying with FMSHA dust regulations at the mine. The ALJ concluded that the case was moot and dismissed the proceeding. However, the ALJ also filed a recommendation to the Commission that Climax be granted a set-off of its litigation expenses against any possible future civil penalties. These expenses were estimated to be approximately $190,500.

In a hearing before the Commission, Climax objected to the dismissal of the proceeding, contending that it was entitled to a declaratory order interpreting the federal dust regulations and specifying that Climax was using all feasible controls. Climax also requested a set-off of litigation expenses against future civil penalties. The Commission denied Climax's requests. The Commission concluded that the government was entitled to a voluntary dismissal of the proceeding before the ALJ and refused to grant Climax a set-off of expenses or declaratory relief.

## II

Climax presents three interrelated arguments against the dismissal of the proceed-

ing and the denial of declaratory relief. Climax asserts that only it, rather than the government, was entitled to seek voluntary dismissal of the administrative proceeding contesting the safety citations, that the issue of dust control at the Climax mine is a live controversy that was not mooted by vacation of the safety citations, and that in any event, the Commission erred in refusing to provide declaratory relief.

### A

Climax claims that it alone was entitled to seek voluntary dismissal of the administrative proceeding contesting the safety citations because the proceeding cast Climax in the role of plaintiff and the applicable procedural rules permit only plaintiffs to seek voluntary dismissal.

Congress authorized the Commission to prescribe rules of procedure governing administrative proceedings under FMSHA. FMSHA § 113(d)(2), 30 U.S.C. § 823(d)(2). These rules provide that "[o]n any procedural question not regulated by the Act, these Procedural Rules, or the Administrative Procedure Act (particularly 5 U.S.C. §§ 554 and 556), the Commission or any [Administrative Law] Judge shall be guided so far as is practicable by any pertinent provisions of the Federal Rules of Civil Procedure as appropriate." 29 C.F.R. § 2700.1(b) (1982). The Commission has no rule governing voluntary dismissal of administrative proceedings and therefore considered the government's motion as analogous to a motion for voluntary dismissal under Rule 41(a)(2) of the Federal Rules of Civil Procedure. Rule 41(a)(2) permits a plaintiff to seek voluntary dismissal of an action through an order of the court containing "such terms and conditions as the court deems proper." Fed.R.Civ.P. 41(a)(2). Climax asserts that dismissal of the administrative proceeding by analogy to this rule is inappropriate because Climax filed an "Application for Review"[3] to commence the administrative proceeding, thereby casting

---

**3.** Under present regulations, an "Application for Review" of a citation is termed a "Notice of Contest." *See* 29 C.F.R. § 2700.20 (1982).

None of the parties asserts that this change in terminology reflects a change in the character of the proceeding.

the government in the role of the defendant.

We disagree with this contention for two reasons. First, the characterization of the government as a defendant ignores the structure and purpose of the administrative proceeding. The government initiates the administrative adjudication by issuing a safety citation. Climax is provided the choice of admitting the safety violation through inaction, or utilizing an administrative proceeding to challenge the citation. The proceeding is conducted for the limited purpose of providing Climax the opportunity to contest the government's citation. Thus, when the proceeding is analogized to a civil case, the government's procedural posture is more closely aligned with that of a plaintiff and Climax with that of a defendant.

 Moreover, administrative agencies retain substantial discretion in formulating, interpreting, and applying their own procedural rules. *See American Farm Lines v. Black Ball Freight Service,* 397 U.S. 532, 539, 90 S.Ct. 1288, 1292, 25 L.Ed.2d 547 (1970). The Commission's decision to accord the government a right to voluntary dismissal in the administrative proceeding is entitled to deference from the courts. By granting this right, the Commission avoids the resolution of issues mooted by the government's decision to forego prosecution of the underlying safety citations. The Commission's approach is a rational means of advancing its procedural interest in the orderly and efficient resolution of safety disputes. It results in no substantial prejudice to other parties and is therefore not an abuse of discretion.

### B

Climax claims that the Commission erred in affirming the dismissal of the administrative proceeding because the issue of dust control at the Climax mine was not rendered moot by the government's vacation of the safety citations.

 At the outset, we note that an administrative agency is not bound by the constitutional requirement of a "case or controversy" that limits the authority of article III courts to rule on moot issues. *Tennessee Gas Pipeline Co. v. Federal Power Commission,* 606 F.2d 1373, 1379–80 (D.C. Cir.1979). Instead, an agency possesses substantial discretion in determining whether the resolution of an issue before it is precluded by mootness. *Id.* However, in exercising this discretion, an agency receives guidance from the policies that underlie the "case or controversy" requirement of article III. In particular, the agency's determination of mootness is informed by an examination of the proper institutional role of an adjudicatory body and a concern for judicial economy. *See id.; Lucas Coal Co. v. Interior Board of Mine Operations Appeals,* 522 F.2d 581, 587 (3d Cir. 1975). As a result, we conclude that an agency acts within its discretion in refusing to hear a case that would be considered moot if tested under the article III "case or controversy" requirement.

Evaluated in this light, the Commission did not abuse its discretion in affirming the ALJ's dismissal of the administrative proceeding contesting the safety citations. This proceeding is intended to provide companies such as Climax with the opportunity to seek review of the government's determination of safety violations. FMSHA § 105(d), 30 U.S.C. § 815(d). The government's vacation of the safety citations eliminated the prospect that Climax would be held liable for the charged violations and rendered moot the specific issues that the administrative proceeding was intended to adjudicate. As a result, the case presented had lost its character as a present, live controversy. *Hall v. Beals,* 396 U.S. 45, 48, 90 S.Ct. 200, 201, 24 L.Ed.2d 214 (1969). Climax has failed to show any unusual circumstances that would dispel a conclusion of mootness. It claims that the dispute with the government over dust control will recur. However, there is no evidence that the government intends to reissue the past citations, and the prospect of future citations is purely conjectural at this time. *See SEC v. Medical Committee for Human Rights,* 404 U.S. 403, 406, 92 S.Ct. 577, 579,

30 L.Ed.2d 560 (1972). Climax claims that the vacated citations are instances of "short-term orders, capable of repetition, yet evading review." *Southern Pacific Terminal Co. v. ICC,* 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911). However, there is no indication in the record that the government makes a practice of citing companies for safety violations, only to subsequently vacate the citations. Instead, the government's decision to discontinue prosecution of the citations issued to Climax appears to be an incident peculiar to this case.

Under these circumstances, the issues properly before the ALJ in the administrative proceeding were rendered moot under the constitutional standard by the government's decision to vacate the safety citations. We therefore conclude that the Commission acted within its discretion in affirming the ALJ's dismissal of the administrative proceeding.

### C

Climax claims that even if the government were entitled to seek voluntary dismissal of the administrative proceeding, and even if the issues raised in the proceeding were mooted by the government's vacation of the safety citations, the Commission nevertheless erred in failing to provide Climax with its requested declaratory relief. Climax claims that it was entitled to a declaration of the Commission's interpretation of the silica dust standard, 30 C.F.R. § 57.5–5 (1982), and its application to the Climax mine.

 Climax raises a number of arguments in support of its request for declaratory relief.[4] However, our inquiry is limited to a review of the Commission's exercise of discretion. Section 5(d) of the Administrative Procedure Act clearly commits the

power to grant declaratory relief to the sound discretion of the agency. 5 U.S.C. § 554(e) (1976). *See also* FMSHA § 105(d), 30 U.S.C. § 815(d) (empowering the Commission to direct "other appropriate relief"). In exercising its discretion, the Commission is entitled to assess the advantages and disadvantages associated with declaratory relief. Advantages include the opportunity efficiently to terminate a controversy or remove uncertainty, APA § 5(d), 5 U.S.C. § 554(e), while disadvantages include both the administrative burden imposed by a policy of issuing advisory opinions and the familiar problems surrounding the adjudication of abstract controversies. *See Yale Broadcasting Co. v. FCC,* 478 F.2d 594, 602 (D.C.Cir.), *cert. denied,* 414 U.S. 914, 94 S.Ct. 211, 38 L.Ed.2d 152 (1973).

 We recognize that in the case before us, there exists considerable uncertainty regarding the proper interpretation of the FMSHA dust regulations. We are sympathetic to the plight of industries that must structure their operations and make long-term capital investments in the face of this uncertain regulatory environment. Nevertheless, the scope of our review of the Commission's denial of declaratory relief is limited to a determination of whether the Commission abused its discretion. In this case, the Commission provided reasonable justifications for the denial of Climax's request for declaratory relief. The Commission noted that the present dust regulations were unclear, in part, because the government's position on dust regulation is presently undergoing reformulation. The Commission may reasonably withhold declaratory relief in anticipation of a clearer exposition of government policy. The Commission also suggested that Climax has shown no special need for declaratory relief; Climax faces no greater peril than other min-

---

**4.** Climax charges that the Commission is required to afford Climax declaratory relief and that the issues underlying the request for declaratory relief are not moot. The first assertion is incorrect and the second is inapposite. The Commission's power to grant declaratory relief is clearly discretionary, *see* Administrative Procedure Act (the "APA") § 5(d), 5

U.S.C. § 554(e) (1976). Therefore, the Commission is not required to grant declaratory relief unless a failure to do so would be an abuse of discretion. *See* APA § 10(e), 5 U.S.C. § 706. Likewise, the mere fact that the issues underlying the request for declaratory relief are not moot does not, by itself, compel the Commission to grant declaratory relief.

ing companies in interpreting the content of the regulations. The Commission may reasonably choose to reserve its use of declaratory relief for special cases in order to conserve its administrative resources. Given the Commission's justifications, we conclude that it did not abuse its discretion in denying declaratory relief.

### III

Climax also seeks a set-off of litigation expenses incurred in contesting the safety citations. The ALJ recommended that these expenses be set off against future civil penalties assessed against Climax. However, the Commission denied this relief.

We initially observe that the Commission may have authority to provide a set-off of litigation expenses in some situations. *See* FMSHA § 105(d), 30 U.S.C. § 815(d) (providing that in considering the parties' claims in administrative proceedings, the Commission may direct "appropriate relief"). However, even if this authority exists, the decision to provide a set-off rests within the discretion of the Commission; we find no authority that requires the Commission to provide this relief. In this case, the Commission determined that a set-off of litigation expenses would insulate Climax from the deterrent effect of potential civil penalties, and therefore chose to deny the set-off. We find this justification acceptable. Without reaching the question of whether the Commission may ever set off litigation expenses against future civil penalties, we conclude that it properly exercised its discretion in denying a set-off in this case.

AFFIRMED.

BARRETT, Circuit Judge, concurring in part and dissenting in part:

I concur in the opinion authored by Judge McKay in all respects except for Part III which denies the set-off of expenses incurred by Climax in amount of $190,500 which all parties agree was expended in complete good faith effort to ascertain the most feasible engineering controls of excessive concentrations of silica-bearing dust in Climax's mine. The ALJ obviously recognized, just as the majority opinion does, that Climax was intent upon protecting its employees from excessive concentration of dust. Climax proved the point by expending these funds. A company such as Climax, having demonstrated its good faith concern for its employees—all of which is ongoing—can hardly be expected to invite or encourage future violations of Commission standards. The opposite is true.

Climax is "leading the way" in efforts to eliminate or control harmful contaminants for the health and protection of its mine employees. Such initiative should be rewarded pursuant to the "appropriate relief" authority of the Commission. The Commission should readily and heartily set-off the $190,500 against any potential civil penalties which may be assessed against Climax by the Commission. The threat of insulating Climax from violating Commission standards by awarding the set-off is unreal.

I would require that the Commission award the set-off to Climax as recommended by the ALJ who, from December 1978 to June 1979, received and considered all of the pre-trial reports, including the various controls-methods probed by Climax. The ALJ was not blind to the good faith intent of Climax. The Commission should not have ignored his recommendation. It abused its discretion by doing so.