Peter C. **LOVENHEIM**, Plaintiff,

v.

**IROQUOIS BRANDS, LTD.**, Defendant.

**Civ. A. No. 85–0734.**

United States District Court, District of Columbia.

March 28, 1985.

Jonathan Eisenberg, Washington, D.C., for plaintiff.

Hadrian R. Katz, Washington, D.C., for defendant.

## MEMORANDUM

GASCH, District Judge.

## I. BACKGROUND

This matter is now before the Court on plaintiff's motion for preliminary injunction.

Plaintiff Peter C. Lovenheim, owner of two hundred shares of common stock in Iroquois Brands, Ltd. (hereinafter "Iroquois/Delaware"),[1] seeks to bar Iroquois/Delaware from excluding from the proxy materials being sent to all shareholders in preparation for an upcoming share-holder meeting information concerning a proposed resolution he intends to offer at the meeting. Mr. Lovenheim's proposed resolution relates to the procedure used to force-feed geese for production of paté de foie gras in France,[2] a type of paté imported by Iroquois/Delaware. Specifically, his resolution calls upon the Directors of Iroquois/Delaware to:

> form a committee to study the methods by which its French supplier produces paté de foie gras, and report to the shareholders its findings and opinions, based on expert consultation, on whether this production method causes undue distress, pain or suffering to the animals involved and, if so, whether further distribution of this product should be discontinued until a more humane production method is developed.

Attachment to Affidavit of Peter C. Lovenheim.

Mr. Lovenheim's right to compel Iroquois/Delaware to insert information concerning his proposal in the proxy materials turns on the applicability of section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a) ("the Exchange Act"), and the shareholder proposal rule promulgated by the Securities and Exchange Commission ("SEC"), Rule 14a-8.[3] That rule states in pertinent part:

> If any security holder of an issuer notifies the issuer of his intention to present a proposal for action at a forthcoming

---

1. As will be discussed *infra*, much of the controversy in this case centers on the need to distinguish between two different corporations named Iroquois Brands, Ltd.—one organized under the laws of the State of Delaware (Iroquois/Delaware) and one organized under the laws of the State of New York (Iroquois/New York).

2. Paté de foie gras is made from the liver of geese. According to Mr. Lovenheim's affidavit, force-feeding is frequently used in order to expand the liver and thereby produce a larger quantity of paté. Mr. Lovenheim's affidavit also contains a description of the force-feeding process:

   > Force-feeding usually begins when the geese are four months old. On some farms where feeding is mechanized, the bird's body and wings are placed in a metal brace and its neck is stretched. Through a funnel inserted 10–12 inches down the throat of the goose, a machine pumps up to 400 grams of corn-based mash into its stomach. An elastic band around the goose's throat prevents regurgitation. When feeding is manual, a handler uses a funnel and stick to force the mash down.

   Affidavit of Peter C. Lovenheim at ¶ 7. Plaintiff contends that such force-feeding is a form of cruelty to animals. *Id.*

   Plaintiff has offered no evidence that force-feeding is used by Iroquois/Delaware's supplier in producing the paté imported by Iroquois/Delaware. However his proposal calls upon the committee he seeks to create to investigate this question.

3. 17 C.F.R. § 240.14a–8.

meeting of the issuer's security holders, the issuer shall set forth the proposal in its proxy statement and identify it in its form of proxy and provide means by which security holders [presenting a proposal may present in the proxy statement a statement of not more than 200 words in support of the proposal [4]].

Iroquois/Delaware has refused to allow information concerning Mr. Lovenheim's proposal to be included in proxy materials being sent in connection with the next annual shareholders meeting. In doing so, Iroquois/Delaware relies on an exception to the general requirement of Rule 14a–8, Rule 14a–8(c)(5). That exception provides that an issuer of securities "may omit a proposal and any statement in support thereof" from its proxy statement and form of proxy:

if the proposal relates to operations which account for less than 5 percent of the issuer's total assets at the end of its most recent fiscal year, and for less than 5 percent of its net earnings and gross sales for its most recent fiscal year, and is not otherwise significantly related to the issuer's business.

Rule 14a–8(c)(5), 17 C.F.R. § 240.14a–8(c)(5).

In addition to asserting that this exception applies, Iroquois/Delaware has raised two other challenges to the granting of a preliminary injunction: a) that the suit should be dismissed for lack of proper service of process; and b) that jurisdiction is not proper as to Iroquois/Delaware in this Court.

## II. LIKELIHOOD OF PLAINTIFF PREVAILING ON MERITS

### A. *Service of Process*

Iroquois/Delaware first asserts in opposition to plaintiff's motion for preliminary

---

4. Rule 14a–8 incorporates by reference Rule 14a–4(b), 17 C.F.R. § 240.14a–4(b), which requires issuers of securities to also include statements by proponents of shareholder proposals.

5. Because Iroquois/Delaware asserts that it has not been properly made a party to this litigation, it has not filed a formal motion to dismiss

---

injunction that plaintiff has failed to serve process upon Iroquois/Delaware.[5]

It is undisputed that plaintiff made service by hand upon C.T. Corporation, the District of Columbia registered agent for a company named Iroquois Brands, Ltd., which is organized under the laws of the State of New York (hereinafter Iroquois/New York) and is distinct from Iroquois/Delaware. Service upon Iroquois/New York was defective as Iroquois/New York is not identified as a defendant.[6]

A copy of the complaint was also mailed by regular mail to the headquarters of Iroquois/Delaware and to Iroquois/Delaware's general counsel. Iroquois/Delaware asserts that this service was defective as it included only an unexecuted summons and was sent by regular mail instead of service by mail with signed receipt. *See* D.C.Code § 13–431.

■ Were these the only attempts at service, Iroquois/Delaware's assertion of no proper service might have merit. However, plaintiff also attempted to serve the complaint together with an executed summons by sending them Federal Express to James P. McCaffrey, President of Iroquois/Delaware, and Joseph H. Sweeney, Senior Vice President of Iroquois. These materials were sent together with a notice of acknowledgment of receipt of summons and complaint. Iroquois/Delaware has not provided the Court with any basis for finding this latest attempt at service insufficient at this time.

### B. *Jurisdiction*

Iroquois/Delaware's second basis for opposing plaintiff's motion for preliminary injunction is its assertion that it is not subject to the jurisdiction of this Court.

---

under Rule 12(b) of the Federal Rules of Civil Procedure but has instead filed a brief as *amicus curiae*.

6. Indeed, counsel for Iroquois/New York represents that the New York firm is not publicly traded, and therefore issues no proxy statements, and is not engaged in the paté business.

Both plaintiff and Iroquois/Delaware agree that section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa, governs the jurisdictional issue. That section provides:

> Any suit or action to enforce any liability or duty created by this chapter or rules and regulations thereunder, or to enjoin any violations of such chapter or rules and regulations, may be brought in any such district [wherein any act or transaction constituting the violation occurred] or in the district wherein the defendant is found or is an inhabitant or transacts business ....

*Id.* According to an affidavit provided by the President of Iroquois/Delaware, the company maintains no offices or facilities in the District of Columbia, employs no persons here, owns no property here, and transacts no business here. Affidavit of James P. McCaffrey, ¶ 3.

■ Plaintiff, however, does not assert that defendant is found or transacts business in the District. Instead, plaintiff asserts that jurisdiction is proper in this District as the alleged violation of Rule 14a–8 plaintiff challenges, the mailing of the proxy statement without including a reference to Mr. Lovenheim's proposal, occurred in this jurisdiction when past proxy statements excluding Mr. Lovenheim's proposal were received by shareholders in the District of Columbia.[7]

As plaintiff properly notes, jurisdiction and venue are proper under section 27 in any district where any violation of the Exchange Act has occurred. The case law construing this section establishes that the mailing of proxy statements that violate the Exchange Act into a district by interstate mail is sufficient to establish jurisdiction over the party mailing such materials. *See, e.g., DeMoss v. First Artists Production Co., Ltd.*, 571 F.Supp. 409 (N.D.Ohio 1983), *appeal dismissed without op.*, 734

F.2d 14 (6th Cir.1984); *Abramson v. INA Capital Management Corp.*, 459 F.Supp. 917, 920–21 (E.D.N.Y.1978); *Mayer v. Development Corp. of America*, 396 F.Supp. 917, 928–30 (D.Del.1975); *Oxford First Corp. v. PNC Liquidating Corp.*, 372 F.Supp. 191 (E.D.Pa.1974).

Iroquois/Delaware challenges the applicability of this authority, asserting that "there is no allegation that any violation of the Exchange Act 'occurred' in the District of Columbia." Supplemental Memorandum of Defendant Iroquois Brands, Ltd. on Jurisdictional Issues at 4. Instead, Iroquois/Delaware asserts that plaintiff alleges only "that a violation may take place in the future." *Id.* at 6. However this reasoning overlooks the fact that the complaint does allege a violation of the Exchange Act and shareholder proposal rule when Iroquois/Delaware refused to include plaintiff's proposal in its proxy materials in 1984. *See supra,* note 7. Accordingly, the Court rejects Iroquois/Delaware's jurisdictional challenge at this time.

### C. *Applicability of Rule 14a–8(c)(5) Exception*

In light of the above discussion of the service and jurisdiction issues, the likelihood of plaintiff's prevailing in this litigation turns primarily on the applicability to plaintiff's proposal of the exception to the shareholder proposal rule contained in Rule 14a–8(c)(5).

Iroquois/Delaware's reliance on the argument that this exception applies is based on the following information contained in the affidavit of its president: Iroquois/Delaware has annual revenues of $141 million with $6 million in annual profits and $78 million in assets. In contrast, its paté de foie gras sales were just $79,000 last year, representing a net loss on paté sales of $3,121. Iroquois/Delaware has only $34,-

---

**7.** In addition to challenging Iroquois/Delaware's decision to omit reference to plaintiff's proposal from the proxy materials being sent in connection with the upcoming 1985 shareholder meeting, the complaint alleges that Iroquois/Delaware violated section 14(a) of the

Exchange Act and Rule 14a–8 by refusing to include plaintiff's proposal in the proxy materials mailed in April 1984 in connection with the company's 1984 shareholder meeting. *See* Complaint ¶¶ 14, 18, 24.

000 in assets related to paté. Thus none of the company's net earnings and less than .05 percent of its assets are implicated by plaintiff's proposal. McCaffrey Affidavit ¶ 6. These levels are obviously far below the five percent threshold set forth in the first portion of the exception claimed by Iroquois/Delaware.

Plaintiff does not contest that his proposed resolution relates to a matter of little economic significance to Iroquois/Delaware. Nevertheless he contends that the Rule 14a–8(c)(5) exception is not applicable as it cannot be said that his proposal "is not otherwise significantly related to the issuer's business" as is required by the final portion of that exception. In other words, plaintiff's argument that Rule 14a–8 does not permit omission of his proposal rests on the assertion that the rule and statute on which it is based do not permit omission merely because a proposal is not economically significant where a proposal has "ethical or social significance." [8]

Iroquois/Delaware challenges plaintiff's view that ethical and social proposals cannot be excluded even if they do not meet the economic or five percent test. Instead, Iroquois/Delaware views the exception solely in economic terms as permitting omission of any proposals relating to a de minimis share of assets and profits. Iroquois/Delaware asserts that since corporations are economic entities, only an economic test is appropriate.

The Court would note that the applicability of the Rule 14a–8(c)(5) exception to Mr. Lovenheim's proposal represents a close question given the lack of clarity in the exception itself. In effect, plaintiff relies on the word "otherwise," suggesting that it indicates the drafters of the rule intended that other noneconomic tests of significance be used. Iroquois/Delaware relies on the fact that the rule examines other significance in relation to the issuer's business. Because of the apparent ambiguity of the rule, the Court considers the history of the shareholder proposal rule in determining the proper interpretation of the most recent version of that rule.

Prior to 1983, paragraph 14a–8(c)(5) excluded proposals "not significantly related to the issuer's business" but did not contain an objective economic significance test such as the five percent of sales, assets, and earnings specified in the first part of the current version.[9] Although a series of SEC decisions through 1976 allowing issuers to exclude proposals challenging compliance with the Arab economic boycott of Israel allowed exclusion if the issuer did less than one percent of their business with Arab countries or Israel,[10] the Commission stated later in 1976 that it did "not believe that subparagraph (c)(5) should be hinged solely on the economic relativity of a proposal." Securities Exchange Act Release No. 12,999, 41 Fed. Reg. 52,994, 52,997 (1976). Thus the Commission required inclusion "in many situations in which the related business comprised less than one percent" of the company's revenues, profits or assets "where the proposal has raised *policy questions* important enough to be

---

**8.** The assertion that the proposal is significant in an ethical and social sense relies on plaintiff's argument that "the very availability of a market for products that may be obtained through the inhumane force-feeding of geese cannot help but contribute to the continuation of such treatment." Plaintiff's brief characterizes the humane treatment of animals as among the foundations of western culture and cites in support of this view the Seven Laws of Noah, an animal protection statute enacted by the Massachusetts Bay Colony in 1641, numerous federal statutes enacted since 1877, and animal protection laws existing in all fifty states and the District of Columbia. An additional indication of the significance of plaintiff's proposal is the support of such leading organizations in the field of animal care as the American Society for the Prevention of Cruelty to Animals and The Humane Society of the United States for measures aimed at discontinuing use of force-feeding. *See* Complaint ¶ 10.

**9.** *See* Comment, *The 1983 Amendments to Shareholder Proposal Rule 14a–8: A Retreat from Corporate Democracy?*, 59 Tulane L.Rev. 161, 183–84 (1984) (hereinafter "Comment, *1983 Amendments*").

**10.** 17 C.F.R. § 240.14a–8(c)(5) (1983).

considered 'significantly related' to the issuer's business." [11]

As indicated above, the 1983 revision adopted the five percent test of economic significance in an effort to create a more objective standard. Nevertheless, in adopting this standard, the Commission stated that proposals will be includable notwithstanding their "failure to reach the specified economic thresholds if a significant relationship to the issuer's business is demonstrated on the face of the resolution or supporting statement." Securities Exchange Act Release No. 19,135, 47 Fed. Reg. 47,420, 47,428 (1982). Thus it seems clear based on the history of the rule that "the meaning of 'significantly related' is not *limited* to economic significance." Comment, *1983 Amendments, supra* note 10 at 183 (emphasis in original).

The only decision in this Circuit cited by the parties relating to the scope of section 14 and the shareholder proposal rule is *Medical Committee for Human Rights v. SEC*, 432 F.2d 659 (D.C.Cir.1970).[12] That case concerned an effort by shareholders of Dow Chemical Company to advise other shareholders of their proposal directed at prohibiting Dow's production of napalm. Dow had relied on the counterpart of the 14a–8(c)(5) exemption then in effect [13] to exclude the proposal from proxy materials and the SEC accepted Dow's position without elaborating on its basis for doing so.[14]

In remanding the matter back to the SEC for the Commission to provide the basis for its decision, *id.* at 682, the Court noted what it termed "substantial questions" as to whether an interpretation of the shareholder proposal rule "which permitted omission of [a] proposal as one motivated primarily by *general* political or social concerns would conflict with the congressional intent underlying section 14(a) of the [Exchange] Act." 432 F.2d at 680 (emphasis in original).[15]

Iroquois/Delaware attempts to distinguish *Medical Committee for Human Rights* as a case where a company sought to exclude a proposal that, unlike Mr. Lovenheim's proposal, was economically significant merely because the motivation of the proponents was political. The argument is not without appeal given the fact that the *Medical Committee* Court was confronted with a regulation that contained no reference to economic significance. *See supra* note 13. Yet the *Medical Committee* decision contains language suggesting that the Court assumed napalm was not economically significant to Dow:

> The management of Dow Chemical Company is repeatedly quoted in sources which include the company's own publications as proclaiming that the decision to continue manufacturing and marketing napalm was made not *because* of business considerations, but *in spite* of them; that management in essence decid-

**11.** Comment, *1983 Amendments, supra* note 10 at 185 (emphasis supplied). For example, "[p]roposals requesting the cessation of further development, planning and construction of nuclear power plants and proposals requesting shareholders be informed as to all aspects of the company's business in European communist countries have been included in this way." *Id.* (footnotes omitted).

**12.** The *Medical Committee* decision was vacated as moot by the Supreme Court after the shareholder proposal at issue failed to get support from three percent of all shareholders, thereby triggering a separate basis for exclusion, Rule 14a–8(c)(4)(i), 17 C.F.R. § 240.14a–8(c)(4)(i). *See SEC v. Medical Committee for Human Rights*, 404 U.S. 403, 406, 92 S.Ct. 577, 579, 30 L.Ed.2d 560 (1972).

**13.** Rule 14a–8(c)(2), 17 C.F.R. § 240.14a–8(c)(2) (1970), permitted exclusion if a proposal was

submitted "primarily for the purpose of promoting general economic, political, racial, religious, social or similar causes."

**14.** *Medical Committee* arose as a direct appeal of the Commission's formal determination. In the instant case, the propriety of excluding the shareholder proposal has not gone before the full Commission although the staff of the SEC has advised Iroquois/Delaware that it will recommend that no enforcement action be taken if the company excludes plaintiff's proposal.

**15.** The Court defined the purpose of section 14(a) of assuring that shareholders exercise their right "to control the important decisions which affect them in their capacity as stockholders and owners of the corporation." 432 F.2d at 680–81.

ed to pursue a course of activity which generated little profit for the shareholders....

*Id.* at 681 (emphasis in original).

■ This Court need not consider, as the *Medical Committee* decision implied, whether a rule allowing exclusion of all proposals not meeting specified levels of economic significance violates the scope of section 14(a) of the Exchange Act. *See* 432 F.2d at 680. Whether or not the Securities and Exchange Commission could properly adopt such a rule, the Court cannot ignore the history of the rule which reveals no decision by the Commission to limit the determination to the economic criteria relied on by Iroquois/Delaware. The Court therefore holds that in light of the ethical and social significance of plaintiff's proposal and the fact that it implicates significant levels of sales, plaintiff has shown a likelihood of prevailing on the merits with regard to the issue of whether his proposal is "otherwise significantly related" to Iroquois/Delaware's business.[16]

## III. OTHER FACTORS BEARING ON INJUNCTIVE RELIEF

■ In addition to considering the likelihood of plaintiff's prevailing on the merits, consideration of plaintiff's motion for preliminary injunction requires a determination as to whether plaintiff will suffer irreparable injury without such relief, whether issuance of the requested relief will substantially harm other parties, and the public interest. *Holiday Tours v. WMATA,* 559 F.2d 841 (D.C.Cir.1977); *Virginia Petroleum Jobbers Ass'n v. FPC,* 259 F.2d 921, 925 (D.C.Cir.1958), *cert. denied,* 368 U.S. 940, 82 S.Ct. 377, 7 L.Ed.2d 339 (1961).

### A. *Irreparable Injury*

In bringing this action, plaintiff sought to include his proposal in Iroquois/Del-

aware's 1985 proxy statement. Counsel for Iroquois/Delaware represents that the proxy statement is to be mailed on or immediately after April 6, 1985. Thus plaintiff contends that absent preliminary relief, the relief sought in his action will be moot.

■ In response, Iroquois/Delaware asserts there is no possibility of irreparable injury as plaintiff has conceded his resolution is likely to fail and even if the resolution passes, it would only require appointment of a study committee. This argument misstates the significance of the shareholder proposal rule which is aimed at guaranteeing that shareholders have access to proxy statements whether or not their proposals are likely to pass[17] and regardless of the immediate force of the resolution if enacted. Absent a preliminary injunction, plaintiff will suffer irreparable harm by losing the opportunity to communicate his concern with those shareholders not attending the upcoming shareholder meeting.

### B. *Injury to Iroquois/Delaware*

Plaintiff asserts that requiring Iroquois/Delaware to include the Lovenheim proposal in its proxy statement would not cause undue harm to the company. Indeed, Iroquois/Delaware included the proposal in its 1983 proxy materials and has not claimed any resulting harm.

■ Iroquois/Delaware asserts that granting the injunction plaintiff seeks could have a distinctly adverse impact on the company. This contention is based on the affidavit of Iroquois/Delaware's president which reports that investors tend to react negatively to the institution of litigation and to the issuance of injunctions against a company. McCaffrey Affidavit ¶ 9. The affidavit also raises the possibility that investors may conclude that Iroquois/Delaware is involved in the mistreat-

---

16. The result would, of course, be different if plaintiff's proposal was ethically significant in the abstract but had no meaningful relationship to the business of Iroquois/Delaware as Iroquois/Delaware was not engaged in the business of importing paté de foie gras.

17. The one exception is that shareholders may not require inclusion of a previously offered proposal which failed to obtain the votes necessary for resubmission under Rule 14a–8(c)(5). Iroquois/Delaware has not contended that this exception is applicable.

ment of animals. *Id.* at ¶¶ 10–11. However, these contentions would appear to be largely speculative.

### C. *Public Interest*

 Plaintiff contends that the public interest represented in the Exchange Act is served by granting injunctive relief and allowing all shareholders to make an informed vote on the proposal. In contrast, Iroquois/Delaware submits that an injunction would be contrary to the "public interest in permitting businesses to function free from harassment, and in preventing proxy statements from becoming cluttered." Given the "overriding" public interest embodied in section 14(a) and the shareholder proposal rule in assuring shareholders the right to control the important decisions which affect corporations, *Medical Committee*, 432 F.2d at 680–81, the Court finds that granting the preliminary injunction would be consistent with the public interest.

## IV. CONCLUSION

For the reasons discussed above, the Court concludes that plaintiff's motion for preliminary injunction should be granted.

### ORDER

Upon consideration of plaintiff's application for a preliminary injunction, the opposition thereto, and the arguments of counsel in open Court, and, as discussed fully in the memorandum accompanying this order, it appearing that plaintiff has demonstrated a likelihood of success on the merits of his claim that the shareholder proposal he has submitted to the defendant may not be omitted from the defendant's proxy statement under Rule 14a–8(c)(5), 17 C.F.R. § 240.14a–8(c)(5), and it further appearing that absent preliminary injunctive relief plaintiff will suffer irreparable harm, and it further appearing that the defendant will not be unduly harmed by the grant of a preliminary injunction and that the public interest will be served by the grant of such relief, it is by the Court this 27th day of March, 1985,

ORDERED that plaintiff's application for a preliminary injunction be, and hereby is, granted; and that defendant Iroquois Brands, Ltd., a company organized under the laws of the State of Delaware, be, and hereby is, enjoined from omitting plaintiff's shareholder proposal from its 1985 proxy statement; and it is further

ORDERED that plaintiff post bond of One Hundred Dollars ($100.00) as security for any costs awarded pursuant to Federal Rule of Civil Procedure 65(c). This requirement will be satisfied by the filing with the Clerk of the Court of a personal check from plaintiff or plaintiff's counsel.