NAACP, DETROIT BRANCH; The Guardians, Inc.; Brady Bruenton; Cynthia Martin; Hilton Napoleon; Sharron Randolph; Betty T. Roland; Grant Battle; Cynthia Cheatom; Evin Fobbs; John Hawkins; Helen Poelinitz, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

DETROIT POLICE OFFICERS ASSOCIATION (DPOA); Thomas Schneider; President of the DPOA; City of Detroit, a Michigan Municipal Corporation; Mayor Coleman A. Young; Detroit Police Department; Board of Police Commissioners; Chief William Hart; Governor William Milliken; and The Michigan Employment Relations Commission, Defendants.

No. 80–73693–DT.

United States District Court, E.D. Michigan, S.D.

June 15, 1988.

Walter S. Nussbaum, Farmington Hills, Mich., on behalf of defendants Detroit Police Officers Ass'n David Schneider, President of DPOA.

Frank W. Jackson, Asst. Corp. Counsel, Detroit, Mich., Daniel B. Edelman, Washington, D.C., Terri L. Hayles, Asst. Corp. Counsel, Detroit, Mich., on behalf of defendants City of Detroit, Mayor Coleman A. Young, Detroit Police Dept., Bd. of Police Com'rs and Chief William Hart.

Thomas Atkins, Brooklyn, N.Y., Barnhart and Mirer by Jeanne Mirer, James W. McGinnis, Detroit, Mich., on behalf of plaintiffs.

## OPINION

GILMORE, District Judge.

In its most recent opinion in this case [1], this Court held, on remand from the Court of Appeals, 821 F.2d 328, that plaintiff could maintain an action under 42 U.S.C. § 1983 against defendant City of Detroit (City), and that the defendant Detroit Police Officers Association's (DPOA) motion for summary judgment on a claim under 42 U.S.C. § 1981 was without merit. The Court, however, raised the question of mootness, and ordered a further hearing to determine whether the case is moot so as to preclude this Court's jurisdiction under Article III because of the lack of an actual case or controversy [2].

### I

The remand hearing ordered by the Court in its opinion of January 13, 1988 [3] was held on May 4, 1988. At that hearing, all parties stipulated that there has been a full recall, or an offer of recall, with protection of full seniority, for all officers laid off in 1979 and 1980. Thus, there has been full compliance with this Court's order contained in its earlier opinion.[4]

It was also stipulated by all parties that, as of February 17, 1988, 51.3 percent of the membership of the DPOA was black, and that, in addition, there were 64 other members of the DPOA who were in a protected class. The parties further stipulated that 70 per cent of all new officers hired after all of those ordered returned to the police force by this Court's previous order were black. In addition, it was agreed that the City had hired 1,290 officers hired subse-

---

1. *See NAACP v. DPOA,* 676 F.Supp. 790 (E.D. Mich.1988).

2. There is no claim for damages against either the City or the DPOA under §§ 1981 or 1983. The only relief sought in this case on remand from the Court of Appeals is injunctive relief.

3. *See* 676 F.Supp. at 799.

4. The Court's earlier opinion on this matter is found at 591 F.Supp. 1194 (E.D.Mich.1984).

quent to the completion of the recall in June 1985.

## II

In making a determination as to whether or not the case is presently moot, this Court must consider whether there has been full compliance with this Court's order contained in its earlier opinion.[5] With reference to the City, the question is whether all of the officers laid off in 1979 and 1980 have been offered recall, and whether the racial composition of the police force is now equivalent to the relevant labor market. The only part of this Court's order that remained pending against the City prior to the action of the Court of Appeals[6] reversing and remanding this case was an order requiring this Court's approval before the lay-off, suspension, or discharge of any police officer, except for disciplinary reasons. With reference to the DPOA, this Court's prior order required reasonable representation of blacks in the leadership structure of the DPOA within 12 months. The Court's specific concern with reference to the DPOA was that "[B]lack members of the DPOA are given their proper representation in the leadership structure of the DPOA, [so] they can, in the future, protect minority members against a breach of the duty of fair representation by the Union. It is this goal that this Court seeks." 591 F.Supp. at 1220.

## III

The concept of mootness goes to the fundamental idea that Article III courts may decide only actual "cases or controversies." As the Supreme Court stated in *Aetna Life Insurance Co. v. Haworth*, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617 (1937):

A justiciable controversy is thus distinguished from a difference or dispute of a

hypothetical or abstract character; from one that is academic or moot. The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.

*Id.* at 240–41, 57 S.Ct. at 464 (citations omitted).

A case can become moot because the law has changed,[7] because a defendant has paid monies owed and no longer wants to appeal,[8] because the allegedly wrongful behavior has passed, been mooted, or could not be reasonably expected to occur.[9]

The Supreme Court has created various exceptions to the rule to prevent either party from creating a technical mootness as a sham to deprive the Court of jurisdiction. For example, if a party voluntarily stops allegedly illegal conduct, that change does not necessarily make the case moot, for the defendant would then be free to return to his old ways. Defendant must show that "there is no reasonable expectation that the wrong will be repeated." *U.S. v. W. T. Grant Co.*, 345 U.S. 629, 633, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953) (quoting *United States v. Aluminum Co. of America*, 148 F.2d 416, 448 (2d Cir. 1945)).

Another exception is the "capable of repetition yet evading review" doctrine. A mere "physical or theoretical possibility" is not enough to meet this test, otherwise "virtually any matter of short duration would be reviewable." There must be a "reasonable expectation" or a "demonstrable possibility" that "the same controversy will reoccur involving the same complaining party." *Murphy v. Hunt*, 455 U.S.

---

5. 591 F.Supp. at 1220–21.

6. *NAACP v. DPOA*, 821 F.2d 328 (6th Cir.1987).

7. *See, e.g., United States v. Alaska S.S. Co.*, 253 U.S. 113, 40 S.Ct. 448, 64 L.Ed. 808 (1920).

8. *See, e.g., California v. San Pablo & Tulare R.R.*, 149 U.S. 308, 313–14, 13 S.Ct. 876, 878, 37 L.Ed. 747 (1893).

9. *See, e.g., SEC v. Medical Committee for Human Rights*, 404 U.S. 403, 406, 92 S.Ct. 577, 579, 30 L.Ed.2d 560 (1972).

478, 482, 102 S.Ct. 1181, 1183–84, 71 L.Ed. 2d 353 (1982).

The Sixth Circuit recently dealt with mootness in *Berry v. School District of the City of Benton Harbor,* 801 F.2d 872 (6th Cir.1986). In *Berry,* the court held moot a claim for injunctive relief governing layoffs where no actual layoff was contemplated. The court pointed out that "[w]ithout knowing the facts of the particular layoff situation, it did not have a case of controversy with the immediacy necessary for an informed decision." 801 F.2d at 875.[10]

## IV

Applying the law set forth above to the facts of the instant case, the Court concludes that the controversy truly is moot, and the Court must therefore dismiss the case.

■ With reference to the City of Detroit, plaintiff concedes that all officers ordered to be recalled have been recalled, and have been given their full seniority rights under the contract between the DPOA and the City. The seniority rights of recalled officers are fully protected under the collective bargaining agreement, and there is no showing that the seniority rights of any recalled officer has ever actually been threatened. If such rights were threatened, the recalled officers would have a clear remedy under the contract grievance procedure.

Nonetheless, plaintiffs sought an agreement from defendants with reference to the rights of recalled officers, and the entry of a consent decree. The proposed agreement is as follows:

As represented to the Court at the May 4, 1988 hearing herein, the parties consider the unchallenged seniority list published by the City of Detroit, on which seniority is based on the date of initial hire as contractually binding as to the status of the recalled officers, notwithstanding any legal rights the parties might otherwise have.

As shown by the signature of their counsel below, the Court may consider this agreement to be the intent of the parties, and may enter same as a consent decree herein.

The City refused to agree to the entry of any proposed consent decree, but argues that the case should be dismissed as moot.

The Court agrees with the City. Everything the Court sought to accomplish in its original judgment in the within matter has been accomplished. All officers laid off in 1979 and 1980 have been recalled. All of these officers have been given full seniority rights, which are protected under the collective bargaining agreement. Therefore, it appears there is no case or controversy remaining with the City, and the matter is moot as to the City.

■ With reference to the DPOA, the Court also finds the case to be moot. The Court's principal concern at the time of its original opinions was that black members of the DPOA be given their proper representation in the leadership structure so they can protect their rights. At that time, the black members were a minority, and there was a clear indication that the rights of many of the black officers were not being protected by the white majority.

Since the time of this Court's opinion in 1984, however, the racial composition of the Detroit Police Department has changed. Presently, blacks constitute 51.3 percent of the Department and 70 percent of new hires. In view of the fact that the majority of the membership of the DPOA is now made up of blacks and other minorities, they are able to protect themselves through intra-union political action against actions of white officers that would deprive them of fair representation or rights under 42 U.S.C. § 1981. This being so, there remains no controversy between the NAACP and the DPOA, and the matter is moot.

10. For other cases discussing mootness, see *Los Angeles v. Lyons,* 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983); *Weinstein v. Bradford,* 423 U.S. 147, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975); and *Speer v. City of Oregon,* 847 F.2d 310 (6th Cir.1988).

For the reasons stated, appropriate orders may be entered dismissing the entire action.