BERKSHIRE CABLEVISION OF
RHODE ISLAND, INC.,
Plaintiff, Appellant,

v.

Edward F. BURKE, etc., et al.,
Defendants, Appellees.

No. 83–1800.

United States Court of Appeals,
First Circuit.

Heard May 10, 1985.
Decided Sept. 24, 1985.

John F. Rogers, Pittsfield, Mass., with whom Frederick M. Myers, Cain, Hibbard, Myers & Cook, Pittsfield, Mass., William P. Robinson III, Jeffrey C. Schreck, Michael DiBiase and Edwards & Angell, Providence, R.I., were on brief for appellant.

Brenda L. Fox, Carol A. Melton, Robert St. John Roper, Michael S. Schooler and Timothy C. Sloan, Washington, D.C., on brief for Nat. Cable Television Ass'n, Inc., amicus curiae.

Thomas A. Rouse, Hartford, Conn., with whom Howard L. Slater and Byrne, Slater, Sandler, Shulman & Rouse, P.C., Hartford, Conn., were on brief for appellee Bellevue Cablevision, Inc.

Michael I. Meyerson, New York Citizens' Committee for Responsible Media, with whom John A. Notte, III, Providence, R.I., R.I. Div. of Public Utilities & Carriers, Michael Botein, Robert T. Perry, New York City, and Henry Geller, Washington, D.C., were on brief for appellee Edward F. Burke and New York Citizens' Committee for Responsible Media, amicus curiae.

Mark S. Mandell, Mandell, Goodman & Schwartz, Ltd., Providence, R.I., Robert S. Lemle and Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., Washington, D.C., on brief for appellee Cablevision Systems Harborview Corp.

John A. Notte, III, Providence, R.I., R.I. Div. of Public Utilities & Carriers, William C. Maaia, Providence, R.I., Robert M. Silva, Middletown, R.I., Mark S. Mandell, Mandell, Aisenberg, Goodman & Schwartz, Ltd., Chester G. Lupton, Carroll, Roberts, Feldstein & Tucker, Ralph T. Della Rosa and Coffey, McGovern, Noel & Neal, Ltd., Providence, R.I., on brief for appellees.

Michael Meyerson, New York Citizens' Committee for Responsible Media, Donna A. Demac, Robert T. Perry, New York City, and Henry Geller, Washington, D.C., on brief for New York Citizens' Committee for Responsible Media and Office of Communication, United Church of Christ, amici curiae.

Timothy E. Wirth, U.S. House of Representatives, Washington, D.C., Charles M. Firestone, Howard J. Symons and David K. Aylward, Washington, D.C., on brief for Timothy E. Wirth, amicus curiae.

Amy R. Tabor, Pawtucket, R.I., Arthur Eisenberg, New York City, and New York Civil Liberties Union on brief for American Civil Liberties Union, Rhode Island Affiliate, amicus curiae.

Before BOWNES, ALDRICH and BREYER, Circuit Judges.

BREYER, Circuit Judge.

Plaintiff, Berkshire Cablevision of Rhode Island, Inc., appeals a district court order 571 F.Supp. 976 (D.R.I.1983), denying its request for injunctive and declaratory relief against Edmund Burke, the Administrator of Rhode Island's Division of Public Utilities and Carriers (DPUC)—the state agency that regulates community antenna television (CATV). Berkshire, an applicant for a CATV franchise, asked the district court to hold unlawful certain conditions that the DPUC would attach to its award of such a franchise—conditions requiring the franchisee to dedicate several cable channels to "public access" and also to connect certain community institutions, including churches, to its system. The district court found the conditions lawful and denied Berkshire's request for relief. Berkshire appealed. While this appeal was pending, the DPUC awarded the franchise to another applicant, who does not object to the conditions. That fact, in our view, makes this case moot. Accordingly, we remand the case with instructions to vacate the judgment. *See United States v. Munsingwear, Inc.,* 340 U.S. 36, 39, 71 S.Ct. 104, 106, 95 L.Ed. 36 (1950).

1. A slightly more detailed account of the history of this case will help explain our conclusion. In 1981, after extensive public hearings, the DPUC promulgated rules setting forth the conditions in question. That same year, the DPUC announced that it would award a CATV franchise for Newport County. Berkshire and eight other organizations applied for the franchise, and the DPUC began to hold comparative hearings. In the meantime, Berkshire filed this suit in federal district court.

Berkshire based its challenge to the franchise conditions on four legal theories. First, it said that the "public access" conditions violated rights of expression guaranteed to the cable franchise operator by the First and Fourteenth Amendments. Second, it said that requiring such an operator to serve community institutions including churches violated the First and Fourteenth Amendments' prohibition against the "establishment" of religion. Berkshire's Establishment Clause argument focused upon what it claimed to be unlawful infringement of its *own* rights as an operator; it did not seek to assert its rights (or the rights of others) as a taxpayer or citizen in general. *Compare Flast v. Cohen,* 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968) (taxpayer standing where Constitution's Spending Clause at issue), *with Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982) (no taxpayer standing otherwise). Third, Berkshire claimed that the DPUC's "public access" rules would take the eventual franchisee's property without compensation, in violation of the Fifth and Fourteenth Amendments. Fourth, Berkshire said that, in any event, these rules exceeded the DPUC's statutory mandate and hence were illegal as a matter of state law.

The federal district court decided in defendant Burke's favor on all counts in October 1983. This court then heard oral argument on Berkshire's appeal. Immediately thereafter, this court certified the state law question to the Rhode Island Supreme Court. *See Clay v. Sun Insurance Office Ltd.,* 363 U.S. 207, 80 S.Ct. 1222, 4 L.Ed.2d 1170 (1960); *Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). In February 1985, that court upheld the DPUC's statutory power to issue the regulations in question. We had this case reargued before a new panel in May 1985.

While these appellate proceedings were taking place, the DPUC awarded the franchise in question to Bellevue Cablevision, one of Berkshire's competitors. (Bellevue received the initial award in August 1984, and won final approval to operate in March 1985.) Bellevue, an intervenor here, evidently does not object to the conditions; it has asked us to dismiss this appeal as moot.

2. There are two basic reasons why these facts require us to dismiss this appeal: 1) The Constitution permits us to adjudicate only actual, live "cases" and "controversies," U.S. Const. art. III, § 2; *Muskrat v. United States*, 219 U.S. 346, 31 S.Ct. 350, 55 L.Ed. 246 (1911); and 2) there is no longer any real possibility that the DPUC's rules will deprive Berkshire of the claimed rights that it seeks to protect. While Berkshire remained an applicant, the DPUC's rules realistically threatened to harm Berkshire's rights or interests as an operator; now that Berkshire is no longer an applicant, such a threat no longer exists. Further, in spite of our specific inquiry, Berkshire has failed to show how its dissatisfaction with the requirements significantly affected its own application, or the outcome.

Berkshire accepts this reasoning in respect to its "taking without compensation" claim. But, it says that the "controversy" in respect to its First Amendment claims continues, and that the case is therefore not moot. *See Southern Pacific Terminal Co. v. ICC*, 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911) (holding "continuing" controversy not moot). We disagree.

First, Berkshire points out that the contested rules are still in place: they still operate to require both "public access" and connections to religious institutions in respect to existing CATV franchises, and they will presumably also do so in respect to any franchises awarded by the DPUC in the future. While these facts show that the DPUC's conduct has a continuing effect, however, they do not show any continuing or future threat to *Berkshire*'s rights or interests as the owner or operator of a CATV system. Yet, it is the specific threat to those rights or interests, and not the simple existence of some allegedly unlawful conduct in the world, that created the concrete "case" or "controversy" permitting jurisdiction in the first place. The elimination of that threat to Berkshire's allegedly protected interests moots the controversy.

The Supreme Court, in *County of Los Angeles v. Davis*, 440 U.S. 625, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979), summarized the doctrine of mootness as follows:

"Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 [89 S.Ct. 1944, 1951, 23 L.Ed.2d 491] (1969). We recognize that, as a general rule, "voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, *i.e.*, does not make the case moot." *United States v. W.T. Grant Co.*, 345 U.S. 629, 632 [73 S.Ct. 894, 897, 97 L.Ed. 1303] (1953). But jurisdiction, properly acquired, may abate if the case becomes moot because

(1) it can be said with assurance that "there is no reasonable expectation ..." that the alleged violation will recur, see *id.*, at 633 [73 S.Ct. at 897]; see also *SEC v. Medical Committee for Human Rights*, 404 U.S. 403 [92 S.Ct. 577, 30 L.Ed.2d 560] (1972), and

(2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation. See, *e.g.*, *DeFunis v. Odegaard*, 416 U.S. 312 [94 S.Ct. 1704, 40 L.Ed.2d 164] (1974); *Indiana Employment Security Div. v. Burney*, 409 U.S. 540 [93 S.Ct. 883, 35 L.Ed.2d 62] (1973).

When both conditions are satisfied it may be said that the case is moot because neither party has a legally cognizable interest in the final determination of the underlying questions of fact and law. *Id.* at 631, 99 S.Ct. at 1383.

The second condition to which the Court refers—complete eradication of the effects of the alleged violation—is satisfied here. Berkshire, in its capacity as a prospective CATV system owner or operator, has not suffered any significant harm from the rules it attacks. Nothing in the record suggests that either the existence of the challenged rules or Berkshire's attack on them led the DPUC not to grant Berkshire the franchise. Berkshire has not convinced us to the contrary. From the beginning, Berkshire has premised its suit on the fu-

ture harm it might suffer if it secured the franchise. The decision not to award Berkshire the franchise forestalls any such future harm.

The first condition to which the Court refers—"no reasonable expectation" of a recurring threat to Berkshire's claimed rights—is also satisfied. For one thing, the DPUC, in response to our questions, has indicated that it has already awarded CATV franchises for areas with a cumulative population of 881,041. The areas of Rhode Island that remain without a franchise are all rural and not densely populated; their combined population is 62,198. These rural areas may not be economically well-suited to cable television. The DPUC has no current plans to franchise any of these areas, with the possible exception of the small community of Boone Lake Shores. No firm has expressed any interest in serving any of the state's other non-franchised areas, and Berkshire has not developed any specific plan to serve Boone Lake Shores or any of the other non-franchised regions. In short, we see no more than a "mere physical or theoretical possibility" that Berkshire will be an applicant for a CATV franchise in Rhode Island in the foreseeable future. *Murphy v. Hunt*, 455 U.S. 478, 482, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353 (1982) (per curiam).

For another thing, even were the DPUC to award further franchises, it might decide not to impose the same conditions on service to the affected rural areas. Even if it did, any applicant could ask for a "variance" from, or "modification" of, the rules. The DPUC's estimation of the burdens and benefits arising from both "public access" and "community service" regulations might well differ in respect to outlying areas with widely dispersed populations, and the agency might therefore vary its regulatory approach to suit the setting. This could alter the analysis of both the freedom of expression and the Establishment Clause issues. We hesitate to make the remote possibility of future franchises the occasion for ruling on the constitutionality of the DPUC's existing rules, especially when future franchise agreements

might not contain conditions identical to those challenged here. *See* 13A C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure: Jurisdiction* § 3533.3, at 300–01 (2d ed. 1984).

Finally, should any genuine dispute actually arise in the future, Berkshire could obtain court review at that time. *See Developmental Disabilities Advocacy Center, Inc. v. Melton*, 689 F.2d 281, 286–87 (1st Cir.1982). The dispute could not readily "evade review," *compare Roe v. Wade*, 410 U.S. 113, 125, 93 S.Ct. 705, 712, 35 L.Ed.2d 147 (1973) (nine-month gestation period may create controversies "capable of repetition, yet evading review"), nor will the presence of the rules in the meantime affect, or "chill," any of Berkshire's rights or interests that it seeks to protect, *compare Carroll v. President of Princess Anne*, 393 U.S. 175, 177–78, 89 S.Ct. 347, 349–50, 21 L.Ed.2d 325 (1968) (finding case not moot where lower court decision, even if vacated, might have had chilling effect on future exercise of First Amendment rights). Thus, with respect to the prospect of future CATV franchises in Rhode Island, we find no "reasonable expectation" or "demonstrated probability," *Murphy v. Hunt*, 455 U.S. at 482–83, 102 S.Ct. at 1184, that the DPUC's continuing conduct threatens any of Berkshire's "legally cognizable interest[s]," *Powell v. McCormack*, 395 U.S. at 496, 89 S.Ct. at 1951.

Berkshire also argues, however, that it has a continuing interest in the franchise awarded to Bellevue. It asserts that the franchise agreement contains unconstitutional conditions, that this infirmity "nullifies" the franchise, and that Berkshire's status as an applicant therefore remains "live." But even if we make rather heroic assumptions (about "standing," for example) and hypothesize that Berkshire could persuade a court to hold the challenged conditions unconstitutional, the remedy would not be to "nullify" the franchise. As we have already noted, there is no evidence that the award to Bellevue was influenced in any way by the dispute over conditions. Thus, the appropriate remedy would

seem to consist of a simple prohibition against enforcing the conditions. That remedy might help Bellevue (which does not seek such help). It would not help Berkshire. Therefore, this argument does not show a live dispute between Berkshire and the DPUC. *See Boston Chapter, NAACP v. Beecher*, 749 F.2d 102 (1st Cir. 1984) (per curiam) (finding case moot where no continuing dispute existed among real parties before the court), *cert. denied,* —— U.S. ——, —— U.S. ——, 105 S.Ct. 2154, 105 S.Ct. 2155, 85 L.Ed.2d 510 (1985).

For these reasons, the judgment of the district court is vacated and this case is remanded with instructions to dismiss the complaint as moot.