**Joann ROBBINS, et al., Plaintiffs,**

v.

**MAINE SCHOOL ADMINISTRATIVE DISTRICT NO. 56, Et al., Defendants.**

**Civ. No. 91–0259–B.**

United States District Court, D. Maine.

Nov. 23, 1992.

**12**

Russell F. Stryker, Maine Advocacy Service, Winthrop, Me., for plaintiffs.

Eric R. Herlan, Drummond, Woodsum, Plimptom & MacMahon, Portland, Me., for MSAD No. 56, Goguen, Foster & Jolliffe.

Peter Stewart, Asst. Atty. Gen., Augusta, Me., for Maine Dept. of Educ.

## ORDER AND MEMORANDUM OF OPINION

BRODY, District Judge.

This matter is before the Court on Defendants' Motion for Summary Judgment filed by Maine School Administrative District No. 56, Sharon Goguen, Brian Foster, and Norman Jolliffe. Plaintiffs JoAnn Robbins and Debora Field allege that Defendants violated the substantive due process rights of Plaintiffs' sons, Corey and Peter, while they attended a regional, self-contained classroom for the behaviorally impaired at Searsport, Maine. Plaintiff Robbins also appeals a ruling by an administrative hearing officer in favor of Defendant M.S.A.D. No. 56 and has filed a Motion to Submit Additional Evidence.

## I. BACKGROUND

Plaintiffs are the mothers of two special education students. Peter Robbins is a 13 year-old from Searsport, Maine who has been identified as educationally handicapped and labeled behaviorally impaired and learning disabled. Corey Field is a 13 year-old from Stockton Springs, Maine and has been identified as educationally handicapped and labeled behaviorally impaired. Both Peter Robbins and Corey Field reside within M.S.A.D. No. 56. Because of their identified disabilities, the children are entitled to an annual individualized education program ("IEP") developed by a pupil evaluation team ("PET") familiar with their particular needs. A PET is composed of the student's parents, teachers, a school administrator, and other invited persons.

In May 1991, a PET for Corey Field determined that he should spend the 1991–92 school year in the Waldo Regional Special Services Behavior Program ("Program") for middle school students. A similar decision was reached by Peter Robbins' PET in August 1991. Plaintiffs contend that their children were subjected to physical and emotional assaults as a result of their placement in the Program. Specifically, Plaintiffs assert a claim under the "State Created Danger" theory of liability. They allege that Defendants affirmatively acted to create a danger to Corey and Peter and then, through a policy, practice or custom of deliberate indifference, placed them in a position where they were harmed by that danger.

Defendant Sharon Goguen is the director of special education for M.S.A.D. No. 56. Defendant Brian Foster is the director of Waldo Regional Special Services. Defendant Norman Jolliffe was a teaching assistant employed by Waldo Regional Special

Services and assigned to the Program during the 1991–92 school year.

Defendants argue, for the following reasons, that they are entitled to summary judgment as a matter of law against both remaining claims in Plaintiffs' Amended Complaint:

(i) Plaintiffs are not entitled to relief under their "State Created Danger" theory of substantive due process;

(ii) There is no policy or custom of deliberate indifference by Defendants to constitutional violations;

(iii) The individual Defendants have a qualified immunity against Plaintiffs' constitutional claim; and

(iv) Plaintiff Robbins' appeal of the special education claim is moot.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

## III. DISCUSSION

### A. *State Created Danger*

■ The Due Process clause is a limitation on the State's power to act and is not "a guaranty of certain minimal levels of safety and security." *DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 195, 109 S.Ct. 998, 1003, 103 L.Ed.2d 249 (1989). "Its purpose was to protect the people from the State, not ensure that the State protected them from each other." *Id.* at 196, 109 S.Ct. at 1003. However, *DeShaney* also holds that "when the State takes a person into its custody and holds him there against his will, the constitution imposes on it a corresponding duty to assume some responsibility for his safety and general well-being." *Id.* at 199, 109 S.Ct. at 1005.

■ The relationship between a state and its students does not constitute the special custodial relationship referred to in *DeShaney*. The absence of an affirmative constitutional duty to protect its students does not, however, mean that a state may create a dangerous situation and place students in harm's way without acquiring a corresponding duty to protect those students from resulting violations of their constitutional rights. A state may be held liable if it can fairly be said to have affirmatively acted to create or exacerbate a danger to the victims. *D.R. v. Middle Bucks Area Voc. Tech. School*, 972 F.2d 1364, 1374 (3d Cir.1992). Mere nonfeasance has been held insufficient to constitute the requisite state action.

> We readily acknowledge the apparent indefensible passivity of at least some school defendants under the circumstances. Accepting the allegations as true, viz., that one school defendant was advised of the misconduct and apparently did not investigate, they show nonfeasance but they do not rise to the level of a constitutional violation. As in *DeShaney*, "[t]he most that can be said of the state functionaries in this case is that they stood by and did nothing when suspicious circumstances dictated a more active role for them."

*Id.* at 1376 (quoting *DeShaney*, 489 U.S. at 203, 109 S.Ct. at 1007).

■ To succeed in their claim, Plaintiffs must demonstrate that Defendants, with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly inflicted physical or emotional injury upon Plaintiffs. Plaintiffs have failed to develop a factual basis showing that any of the Defendants acted in such a way.

The undisputed facts of the case present the following scenario. In accordance with federal and state law, placements in the Program were made subsequent to an individualized PET placement determination. These PET placements included parental participation and approval. Defendant Foster attended all PET meetings for students in the Program and met monthly on a formal basis with the special education directors of the three participating school

units. The teachers hired to administer the Program were fully certified to implement the Program and, prior to the beginning of school, were given four to five hours of additional instruction which included a review of the behavior management system and the records of the incoming students. Furthermore, before classes began, Defendant Foster arranged for separate training sessions between the Program's Behavior Consultant and head teacher Barry Coonan.

After classes began, Defendant Foster monitored the room at least twice each week and provided the teachers with additional training when it became apparent that they were having difficulty implementing the Program. Defendant Foster sent the Behavior Consultant into the classroom on numerous occasions to give guidance to the teachers. Additionally, Defendant Foster conducted a regularly scheduled, formal evaluation of Mr. Coonan in early November, 1991 and replaced him shortly thereafter when the difficulties in Program implementation persisted. Once a new teacher was installed, the problems in the classroom ceased.

Defendant Goguen's office was on the same campus as the behavioral classroom. Plaintiffs submit no factual support for their allegations that Defendant Goguen failed to take action to more effectively implement the program or that Defendant Goguen was indifferent to the situation in the classroom.

Plaintiffs' Statement of Material Facts also fails to present any factual basis through which an action can be maintained against Defendant Jolliffe. There is no allegation that Jolliffe ever made any inappropriate contact, used inappropriate language, or behaved in a manner sufficient to justify a cause of action against him.

While there may be problems inherent in a behavioral program of this sort, Defendants can not be said to have established and maintained a policy, practice or custom, with deliberate indifference to the consequences, which resulted in harm to the two boys. The undisputed facts show that, contrary to a policy of deliberate indiffer-

ence, Defendants maintained a policy of adequate supervision over the Program. Defendants hired teachers who were properly certified and trained, and reacted when the situation demanded.

The Supreme Court addressed the issue of adequate training in *City of Canton, Ohio v. Harris,* 489 U.S. 378, 390, 109 S.Ct. 1197, 1205, 103 L.Ed.2d 412, 427–28 (1989).

> It may seem contrary to common sense to assert that a municipality will actually have a policy of not taking reasonable steps to train its employees. But it may happen that in light of the duties assigned to specific officers or employees the need to more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need. In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury.

In this case, when it became clear that the Program was not functioning efficiently, Defendant Foster promptly removed the head teacher. Although unfortunate incidents may have occurred in the classroom, neither Defendant M.S.A.D. No. 56 nor the individual Defendants can be held liable for those incidents under the State Created Danger theory of liability.

### B. *Plaintiff Robbins' IDEA Claim*

▮▮▮ Defendants also assert that Plaintiff Robbins' claim under the Individuals With Disabilities Education Act ("IDEA"), 20 U.S.C.A. § 1400 *et seq.,* is moot and that summary judgment should therefore be entered as to this claim.

"Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack,* 395 U.S. 486, 496, 89 S.Ct. 1944, 1951, 23 L.Ed.2d 491 (1969). The claim becomes moot when (1) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur, and (2) in-

terim relief or events have completely and irrevocably eradicated the effects of the alleged violation. *County of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979). This analysis was adopted by the First Circuit in *Berkshire Cablevision v. Burke*, 773 F.2d 382 (1st Cir.1985).

The current case meets the standards set forth in *Davis* and *Berkshire Cablevision* and is moot. Pursuant to a meeting of his PET, Peter Robbins was removed from the Waldo Regional Special Services Behavior Program in June, 1992. Peter Robbins' new program provides both vocational and tutorial services and does not include the "Points/Levels" system that was contested by Plaintiff Robbins. The issue considered by the hearing officer concerned an IEP that is no longer in existence. Any decision to place Peter back in the Waldo Regional Special Services Behavior Program would be based on entirely new information and behavior. Furthermore, under 20 U.S.C.A. § 1415(e), any such decision to place Peter back in the Program would have to be made by Peter's PET. Because Plaintiff Robbins is a member of the PET, such a decision could not be made over her objection without a court order. Peter would be maintained in his current placement until all administrative and legal challenges were complete. 20 U.S.C.A. § 1415(e)(3). For this reason, Plaintiff's reliance on *Honig v. Doe*, 484 U.S. 305, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988), is misplaced. *Honig* dealt with a procedure in which the student remained subject to a unilateral change in placement (suspension). This is not the situation here.

In accordance with the Court's finding that Plaintiff Robbins' IDEA claim is now moot, Plaintiff Robbins' Motion to Submit Additional Evidence on the IDEA claim is DENIED.

IV. CONCLUSION

Accordingly, Defendants' Motion for Summary Judgment is GRANTED on both claims and Plaintiff Robbins' Motion to Submit Additional Evidence is DENIED.

SO ORDERED.